**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BELDEN CANADA ULC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-782-RGA |
| | ) | |
| COMMSCOPE, INC., COMMSCOPE, INC. | ) | |
| OF NORTH CAROLINA, and COMMSCOPE | ) | |
| TECHNOLOGIES LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT CLAIM CONSTRUCTION BRIEF

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
pkraman@ycst.com
rvrana@ycst.com
jsiew@ycst.com

Douglas J. Nash
John D. Cook
Genevieve M. Halpenny (No. 6738)
BARCLAY DAMON, LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202
(315) 425-2700

Naresh K. Kannan
BARCLAY DAMON, LLP
80 State Street
Albany, New York 12207
(518) 429-4200

*Attorneys for Plaintiff*

RICHARDS LAYTON & FINGER, P.A.

Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

OF COUNSEL:

Philip P. Caspers
Timothy A. Lindquist
Tara C. Norgard
Dennis C. Bremer
Saukshmya Trichi
Christopher R. Johnson
CARLSON, CASPERS, VANDENBURGH
& LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, Minnesota 55402
Telephone: (612) 436-9600

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

Introduction ....................................................................................................................... 1

   I.    Preliminary Statement ............................................................................................ 1

      A.  Plaintiff's Opening Position ....................................................................... 1

      B.  Defendants' Answering Position ................................................................. 1

      C.  Plaintiff's Reply Position ........................................................................... 2

      D.  Defendants' Sur-Reply Position ................................................................. 3

Disputed Constructions ..................................................................................................... 3

   I.    Term 1 – "compensation structure" ....................................................................... 3

      A.  Plaintiff's Opening Position ....................................................................... 4

      B.  Defendants' Answering Position ................................................................. 5

      C.  Plaintiff's Reply Position ........................................................................... 7

      D.  Defendants' Sur-Reply Position ................................................................. 8

   II.   Term 2 – "located near contact points" ................................................................ 10

      A.  Plaintiff's Opening Position ..................................................................... 10

      B.  Defendants' Answering Position ............................................................... 12

      C.  Plaintiff's Reply Position ......................................................................... 14

      D.  Defendant's Sur-Reply Position ............................................................... 15

   III.  Terms 3, 4, and 5 - "conductive path" Terms ..................................................... 16

      A.  Plaintiff's Opening Position ..................................................................... 17

      B.  Defendants' Answering Position ............................................................... 20

      C.  Plaintiff's Reply Position ......................................................................... 23

      D.  Defendants' Sur-Reply Position ............................................................... 25

   IV.  Term 6 - "said compensation structure being conductively connected to at least some of said contacts" ....................................................................................................... 26

      A.  Plaintiff's Opening Position ..................................................................... 26

      B.  Defendants' Answering Position ............................................................... 27

      C.  Plaintiff's Reply Position ......................................................................... 29

D.   Defendants' Sur-Reply Position ........................................................................ 31

V.   Term 7 - "[a compensation structure] being arranged to provide compensation signals that balance a selected amount of cross-talk generated in said connector" ..................................... 33

A.   Plaintiff's Opening Position ............................................................................. 33

B.   Defendants' Answering Position....................................................................... 34

C.   Plaintiff's Reply Position ................................................................................. 36

D.   Defendants' Sur-Reply Position ....................................................................... 37

VI.   Terms 8 and 9 – "cantilevered springs" terms ..................................................... 38

A.   Plaintiff's Opening Position ............................................................................. 39

B.   Defendants' Answering Position....................................................................... 40

C.   Plaintiff's Reply Position ................................................................................. 42

D.   Defendants' Sur-Reply Position ....................................................................... 44

VII.   Term 10 - "said compensation structure includes capacitive balancers" ..................... 45

A.   Plaintiff's Opening Position ............................................................................. 46

B.   Defendants' Answering Position....................................................................... 47

1.   Term 10(a): "capacitive balancers" (claim 3)........................................... 48

2.   Term 10(b): "capacitive coupling elements" (claims 6, 12, 18, 19, 21).................... 49

C.   Plaintiff' Reply Position ................................................................................... 50

D.   Defendants' Sur-Reply Position ....................................................................... 51

VIII.   Term 11 - "said jack comprising … a plurality of contacts juxtaposed side-by-side and arranged in a single row" ............................................................................................ 52

A.   Plaintiff's Opening Position ............................................................................. 52

B.   Defendants' Answering Position....................................................................... 54

C.   Plaintiff's Reply Position ................................................................................. 58

D.   Defendants' Sur-Reply Position ....................................................................... 60

IX.   Term 12 - "a cantilever spring contacts" term ..................................................... 61

A.   Plaintiff's Opening Position ............................................................................. 62

B.   Defendants' Answering Position....................................................................... 62

C.   Plaintiff's Reply Position ................................................................................. 64

D.   Defendants' Sur-Reply Position ....................................................................... 64

X.   Term 13 - "at least two of said spring contacts having capacitive coupling elements electrically connected to said moveable ends of said at least two spring contacts".................. 65

iii

| | A. | Plaintiff's Opening Position | 65 |
| | B. | Defendants' Answering Position | 66 |
| | C. | Plaintiff's Reply Position | 68 |
| | D. | Defendants' Sur-Reply Position | 69 |
| XI. | | Terms 14 and 15 – "numbered 1- 8 seriatim" terms | 70 |
| | A. | Plaintiff's Opening Position | 71 |
| | B. | Defendants' Answering Position | 72 |
| | C. | Plaintiff's Reply Position | 73 |
| | D. | Defendants' Sur-Reply Position | 75 |
| XII. | | Term 16 - "said capacitive coupling elements, electrically connected to spring contacts number 1 and 5, are electrically isolated from each other" | 75 |
| | A. | Plaintiff's Opening Position | 76 |
| | B. | Defendants' Answering Position | 76 |
| | C. | Plaintiff's Reply Position | 79 |
| | D. | Defendants' Sur-Reply Position | 80 |
| XIII. | | Term 17 - "said capacitive coupling elements include dielectric elements" | 81 |
| | A. | Plaintiff's Opening Position | 81 |
| | B. | Defendants' Answering Position | 82 |
| | C. | Plaintiff's Reply Position | 83 |
| | D. | Defendants' Sur-Reply Position | 85 |
| XIV. | | Term 18 - "said plurality of connector terminals include eight connector terminals numbered 1-8 seriatim" | 85 |
| | A. | Plaintiff's Opening Position | 86 |
| | B. | Defendants' Answering Position | 86 |
| | C. | Plaintiff's Reply Position | 88 |
| | D. | Defendants' Sur-Reply Position | 88 |
| XV. | | Term 19 - "said spring contacts number 1, 3 and 5 are capacitively coupled by a first set of said capacitive coupling elements, and said spring contacts number 4, 6 and 8 are capacitively coupled by a second set of said capacitive coupling elements" | 89 |
| | A. | Plaintiff's Opening Position | 89 |
| | B. | Defendants' Answering Position | 90 |
| | C. | Plaintiff's Reply Position | 92 |

D.   Defendants' Sur-Reply Position ........................................................................ 93

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Accent Packaging, Inc. v. Leggett & Platt, Inc.*,
  707 F.3d 1318 (Fed. Cir. 2013).................................................................. *passim*

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)...........................................................13, 83, 84

*Baran v. Med. Device Techs., Inc.*,
  616 F.3d 1309 (Fed. Cir. 2010)...........................................................57

*Barnhart v. Thomas*,
  540 U.S. 20 (2003)...........................................................75

*Broadcom Corp. v. Emulex Corp.*,
  732 F.3d 1325 (Fed. Cir. 2013)...........................................................30, 42

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co., KG*,
  224 F.3d 1308 (Fed. Cir. 2000)...........................................................72

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  296 F.3d 1106 (Fed. Cir. 2002)...........................................................62

*CBT Flint Partners, LLC v. Return Path, Inc.*,
  654 F.3d 1353 (Fed. Cir. 2011)...........................................................88

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004)...........................................................72, 73

*Cooper Notification, Inc. v. Twitter, Inc.*,
  867 F. Supp. 2d 485 (D. Del. 2012)...........................................................73, 82

*Digital-Vending Servs, Int'l, LLC v. Univ. of Phoenix, Inc.*,
  672 F.3d 1270 (Fed. Cir. 2012)...........................................................13

*Dyfan, LLC v. Target Corp.*,
  28 F.4th 1360 (Fed. Cir. 2022) ...........................................................5, 7, 8

*Ecolab, Inc. v. FMC Corp.*,
  569 F.3d 1335 (Fed. Cir. 2009)...........................................................23, 24

*Egenera, Inc. v. Cisco Sys.*,
  972 F.3d 1367 (Fed. Cir. 2020)...........................................................5, 6

*Fenner Invs., Ltd. v. Cellco P'ship,*
    778 F.3d 1320 (Fed. Cir. 2015)................................................................56

*Finjan LLC v. ESET, LLC,*
    51 F.4th 1377 (Fed. Cir. 2022) ...............................................................79

*Freeny v. Aruba Networks, Inc.,*
    No. 14-1031-WCB, 2015 WL 5766265 (E.D. Tex. Sept. 29, 2015) .....................36

*GREE, Inc. v. Supercell Oy,*
    No. 19-413, 2020 WL 6559435 (E.D. Tex. Nov. 6, 2020)........................63, 73, 87

*Haddad v. United States,*
    164 Fed. Cl. 28 (2003) ........................................................................86

*Haemonetics Corp. v. Baxter Healthcare Corp.,*
    607 F.3d 776 (Fed. Cir. 2010)...........................................................72, 82

*Howmedica Osteonics Corp. v. Zimmer, Inc.,*
    822 F.3d 1312 (Fed. Cir. 2016).......................................................54, 57, 58

*IGT v. Bally Gaming Int'l, Inc.,*
    659 F.3d 1109 (Fed. Cir. 2011)...............................................................27

*Inventio AG v. Thyssenkrupp Elevator Ams. Corp.,*
    5 F. Supp. 3d 665 (D. Del. 2013)............................................................62

*Iridescent Networks, Inc. v. AT&T Mobility, LLC,*
    933 F.3d 1345 (Fed. Cir. 2019)...............................................................56

*Kara Tech. Inc. v. Stamps.com Inc.,*
    582 F.3d 1341 (Fed. Cir. 2009)........................................................ *passim*

*Kyocera Senco Indus. Tools, Inc. v. ITC,*
    22 F.4th 1369 (Fed. Cir. 2022) .................................................................6

*LG Elecs., Inc. v. Bizcom Elecs., Inc.,*
    453 F.3d 1364 (Fed. Cir. 2006).................................................................79

*Malvern Panalytical Inc. v. TA Instruments-Waters LLC,*
    85 F.4th 1365 (Fed. Cir 2023) .............................................................23, 24

*Masimo Corp. v. Sotera Wireless, Inc.,*
    No. 2022-1415, 2023 WL 6307959 (Fed. Cir. Sept. 28, 2023) ............................36

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
    851 F.3d 1275 (Fed. Cir. 2017)...........................................................12, 14

*Minebea Co. v. Think Outside, Inc.*,
  No. 01-771, 2002 WL 34455511 (S.D. Cal. Aug. 17, 2002) ...................................................41

*MTD Prods. Inc. v. Iancu*,
  933 F.3d 1336 (Fed. Cir. 2019) ..........................................................................................6

*Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*,
  30 F.4th 1339 (Fed. Cir. 2022) ....................................................................................11, 14

*Nite Glow Indus. v. Cent. Garden & Pet Co.*,
  No. 12-4047, 2016 U.S. Dist. LEXIS 43838 (D.N.J. Mar. 30, 2016)....................................63

*Novo Indus., L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed. Cir. 2003) ................................................................................. *passim*

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  35 F.4th 1367 (Fed. Cir. 2022) ...................................................................................62, 86

*In re Personalweb Techs., LLC*,
  No. 18-2834, 2019 WL 3859023 (N.D. Cal. Aug. 16, 2019), *aff'd*, 2021 WL
  3557196 (Fed. Cir. Aug. 12, 2021)........................................................................................49

*PM Holdings, LLC v. Heart of Tex. Surgery Ctr., PLLC*,
  2022 WL 1230272 (W.D. Tex. Apr. 26, 2022)...............................................................12, 14

*PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*,
  525 F.3d 1159 (Fed. Cir. 2008).............................................................................................57

*RetailMeNot, Inc. v. Honey Sci. Corp.*,
  No. 18-937, 2019 U.S. Dist. LEXIS 205723 (D. Del. Nov. 27, 2019)...................................87

*RFR Indus., Inc. v. Century Steps, Inc.*,
  No. 98-988, 1999 U.S. Dist. LEXIS 15212 (N.D. Tex. Sep. 23, 1999) .................................41

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed. Cir. 1999).............................................................................................86

*Schumer v. Laboratory Comput. Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002)......................................................................................47, 48

*SIMO Holdings, Inc. v. H.K. uCloudlink Network Techs., Ltd.*,
  983 F.3d 1367 (Fed. Cir. 2021).............................................................................................56

*Sulzer Textil A.G. v. Picanol N.V.*,
  358 F.3d 1356 (Fed. Cir. 2004)......................................................................................47, 84

*Thorner v. Sony Comput. Entm't Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012).............................................................................27, 30, 47

*Truinject Corp. v. Galderma*,
    No. 19-592, 2020 WL 3287047 (D. Del. June 18, 2020) ......................................................87

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
    587 F.3d 1339 (Fed. Cir. 2009)...........................................................................................62

*United Cannabis Corp. v. Pure Hemp Collective*,
    No. 18-1922, 2019 WL 10301524 (D. Colo. Feb. 19, 2019)...........................................63, 87

*UUSI, LLC v. United States*,
    131 Fed. Cl. 244 (2017) .....................................................................................................62

*Via Vadis, LLC v. Blizzard Entm't, Inc.*,
    815 Fed. App'x. 539 (Fed. Cir. 2020)......................................................................34, 36, 37

*Williamson v. Citrix Online, LLC*,
    792 F.3d 1339 (Fed. Cir. 2015)............................................................................................6

*Worlds, Inc. v. Activision Blizzard, Inc.*,
    No. 12-10576, 2014 U.S. Dist. LEXIS 32216 (D. Ma. Mar. 13, 2014)..................................63

## INTRODUCTION

### I.      Preliminary Statement

#### A.      Plaintiff's Opening Position

Plaintiff Belden Canada ULC ("Belden" or "Plaintiff) and defendants CommScope, Inc.,

CommScope Inc. of North Carolina, and CommScope Technologies, LLC (collectively,

"CommScope" or "Defendants") are competitors in the telecommunications and cable products

industry.  CommScope has infringed Belden's United States Patent No. 6,409,547 (the "Patent-in-

Suit") by marketing and selling various RJ-45 jack products (the "Accused Products") that fall

within the scope of the asserted claims of the Patent-in-Suit.  To try to avoid infringement,

CommScope now invites the Court to commit a host of factual and legal errors.  By contrast,

Belden's constructions are directly supported by the intrinsic record and well-settled claim

construction principles of patent law.

#### B.      Defendants' Answering Position

Plaintiff accused Defendants of infringing U.S. Patent No. 6,409,547 (D.I. 58, Ex. B)[1]

approximately 19 years ago.  After Defendants explained why the patent is not valid or infringed,

Plaintiff sat silent, waiting until now, long after the patent expired, to file this suit.

Defendants propose constructions for terms that reflect their plain and ordinary meanings

and are consistent with the intrinsic record.  Plaintiff, in contrast, proposes constructions that are

contrary to the plain meaning of various terms, contrary to the intrinsic record, and, in some

instances, self-contradictory or introduce ambiguity rather than clarification.  In many instances,

---

[1] For clarity, all citations herein to "D.I. 58, Ex. __" are to exhibits filed with the Joint Claim
Construction Chart (D.I. 58) on November 20, 2023.  Patent pin cites are to column and line,
figure, or claim.  Page cites to non-patent exhibits use the ECF header page numbers.

Plaintiff asks the Court to effectively, or actually, rewrite claim terms. Some of the terms are indefinite because the patent does not provide any objective boundaries to determine their scope.

C.   <u>Plaintiff's Reply Position</u>

One central theme of CommScope's proposed construction centers on its invitation that the Court improperly exclude embodiments with compensation structures located on printed circuit boards (PCBs), such as CommScope's Accused Products in this case. CommScope invites the Court to erroneously disregard how the Specification expressly discloses PCB-based compensation structures and the claim language of course is broad enough to cover both PCB and non-PCB types. For example, the Figure 2 embodiment disclosed in the Specification expressly discloses "two types of compensation structures," including "printed circuit board" based compensation structures (yellow on green PCB) and non-PCB compensation structures (enclosed in red). (D.I. 58, Ex. B, 7:16-36.)



FIG. 2

2

The Summary also confirms that both types are within the scope of its disclosure, stating that some "preferred" embodiments have compensation structures not located on a printed circuit board while other PCB-based embodiments are preferred so long as they include "one or more" other connection features.  (*See id.*, 4:60-67.)

And, as explained in detail below, nothing in the claim language excludes non-PCB embodiments.  Both types of compensation structures may have "capacitive balancers" or plates (Term 10), "have capacitive coupling elements electrically connected to moveable ends" (Term 13), be "electrically isolated" (Term 16), "include dielectric elements" (Term 17), or be "coupled by a first set" of elements (Term 19).

    D.    Defendants' Sur-Reply Position

CommScope is not asking the Court to construe the claims to preclude coverage of all jacks with PCB-based compensation structures.  None of CommScope's constructions mention whether the compensation structure is PCB-based.

## DISPUTED CONSTRUCTIONS

## I.    Term 1 – "compensation structure"

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "compensation structure" (Claims 1, 3) | a structure for balancing cross-talk (*e.g.*, noise signal) | means plus function (corresponding structure: capacitor plates integral with free ends of a jack's contact springs) (corresponding function: to provide compensation signals that balance a selected amount of cross-talk generated in said connector) |
| **Why Resolution Matters** | **Belden's Position** | **CommScope's Position** |
| | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under |

3

| | | Section 112. Specifically, for example, resolution clarifies what "compensation structure" is. |
|---|---|---|

**A.**     Plaintiff's Opening Position

Belden's construction focuses on how the required "compensation structure" is a structure for balancing cross-talk (*e.g.*, noise signal) to improve performance of a connector. Compensation structures were understood by those of ordinary skill in the art at the time of the claimed invention ("POSA") as the name for a circuit using capacitors and/or inductors for balancing cross-talk in a connector system. (Eldering Decl., ¶¶20-21.)[2] Indeed, different prior art compensation structures using capacitors and/or inductors were well-known and described in patent publications around the time of the invention. (*Id.*)

The Background of the Patent-in-Suit explains that "[c]ross-talk is a measure of undesirable signal coupling from one signal-carrying medium to another." (D.I. 58, Ex. B, 1:45-46.) Cross-talk is caused when multiple pairs of wires are arranged in close proximity inside a single cable jacket. (*Id.*, 2:28-31.) As a first defense against cross-talk, the pairs of wires are twisted "because twisted pairs eliminate some types of cross-talk and other noise." (*Id.* 1:27-30.) Additional techniques, such as "counter-coupling" and "compensation structures," have been used, and the prior art addressed cross-talk using "compensation structures designed to minimize the overall coupling inside the connector system." (*Id.*, 3:14-17; Eldering Decl., ¶¶20-21.)

---

[2] The Eldering Declaration in Support of Plaintiff's Opening Brief and Eldering Declaration in Support of Plaintiff's Reply Brief are referred to collectively, herein, as "Eldering Decl." and are included in the Joint Appendix at JA0001- JA0148 and JA0222-JA0249.

Against this backdrop, the claimed invention relates to specific improvements in "compensation structures *that balance cross-talk* generated within the connectors."[3] (D.I. 58, Ex. B, 1:6-8.) The claims explain that the inventive compensation structure "is arranged to provide compensation signals *that balance* a selected amount of *cross-talk generated in said connector*." (*Id.* 12:59-61.)

By contrast, CommScope attempts to transform this well understood term into a means plus function limitation. Yet, the word "means" is not in the claims, which means there is a legal presumption against such a construction that CommScope has to rebut. *See, e.g.*, *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1370-71 (Fed. Cir. 2022). While Belden will respond to any attempt made by CommScope to rebut that presumption in its reply, the overarching problem with CommScope's position is that, as discussed above, a POSA would readily recognize that, in terms of structure, a "compensation structure" is a circuit using capacitors and/or inductors for balancing cross-talk in a connector system. *Id.* (finding that "limitations are not written in means-plus-function format because they connote sufficiently definite structure to persons of ordinary skill in the art").

**B.**    Defendants' Answering Position

The dispute is whether "a compensation structure" is a means-plus-function limitation under § 112, ¶6 even though the word "means" is not recited. A patent owner may not freely engage in functional claiming and circumvent the application of § 112, ¶6 simply by avoiding the use of the word "means." *Egenera, Inc. v. Cisco Sys.*, 972 F.3d 1367, 1372-73 (Fed. Cir. 2020). Thus, the presumption against § 112, ¶6 is not strong, and can be overcome when the limitation "fails to 'recite[] sufficiently definite structure' or else recites [a] 'function without reciting

---

[3] Unless otherwise noted, all emphasis is added.

sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). "One way to demonstrate that a claim limitation fails to recite sufficiently definite structure is to show that, although not employing the word 'means,' the claim limitation uses similar 'nonce words that can operate as a substitute for 'means'" such as "'module,' 'mechanism,' 'element,' and 'device.'" *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1341 (Fed. Cir. 2019). Such generic words are tantamount to using the word "means" because "they 'typically do not connote sufficiently definite structure.'" *Williamson,* 792 F.3d at 1350 (quoting *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006)).

A person of ordinary skill in the art ("POSITA") would not understand "compensation structure" to have a sufficiently definite structural meaning. The phrase alone, or in combination with other claim language, does not connote a definite meaning because it is simply a generic placeholder word ("*structure*") modified by a purely functional language ("*compensation*"). *See Kyocera Senco Indus. Tools, Inc. v. ITC*, 22 F.4th 1369, 1379-81 (finding "lifter member" subject to § 112, ¶6); *Egenera*, 972 F.3d at 1373-75. While Belden claims there is a well-known meaning for this term (discussed further below), its proposed construction ("structure for balancing crosstalk") is just as broad and formless as the disputed term. *See Egenera*, 972 F.3d at 1374 (district court finding that the patentee's definition was "so broad and formless as to be a generic black box for performing the recited . . . functions"). Belden's construction is written in classic means-plus-function form.

Belden erroneously argues that a POSITA would readily recognize that a "compensation structure" is "a circuit using capacitors and/or inductors for balancing cross-talk in a connector system." Plaintiff Op. Position, *supra*, at 4. First, that is not Belden's own proposed construction.

Second, that definition does not describe the preferred embodiment in Belden's patent. Each of the disclosed and claimed compensation structures (e.g., elements 90, 90A, 90B, 91A) is an arrangement of plates, which is not a ***circuit*** using capacitors and/or inductors. *E.g.*, D.I. 58, Ex. B, 4:28-37, FIG. 2. For example, and with reference to Term 2 (*infra*), it is plates that are located at a distance from contact points, not a circuit located at a distance from contact points.

Third, the specification uses the generic term "compensation structure" to refer to things that are not circuits including capacitors and/or inductors, including a wire manager and a contact (lead frame) design. *See* D.I. 58, Ex. B, 3:62-4:3; 7:8-10; J.A. Ex. 8 (hereinafter "Locati Decl.")[4], ¶¶22-24. So does at least one of the patents Dr. Eldering mentions. Locati Decl. ¶24.

The term should be construed as a means-plus-function term, *see id.* ¶¶22-24, and the Court should adopt CommScope's construction.

C.   <u>Plaintiff's Reply Position</u>

CommScope has not only failed to meet its burden to show that § 112, ¶ 6 applies, but its expert confirmed Belden's position. *See Dyfan,* 28 F.4th at 1370. First, Belden's expert Dr. Eldering, citing numerous patent publications from the time of the invention, explained how, based on such actual evidence, the term "compensation structure" is a term of art that itself connotes structure to a POSA. (Eldering Decl., ¶21.) In response, CommScope's expert initially relied upon *ipse dixit*, unsupported, and conclusory theory that "compensation structure" does not connote structure to a POSA. (*See* Locati Decl., ¶¶22-24.) But when attempting to argue that Belden's construction is incorrect, CommScope's expert pivoted to admitting that "U.S. Patent No. 6,464,529 (Eldering Decl., Ex. 1), discloses 'compensation structure' being a three-layer

---

[4] The First Locati Declaration ("Locati Decl.") is included in the Joint Appendix, concurrently filed with the Joint Claim Construction Brief, at JA0186-JA0221.

arrangement of leads." (*See* Locati Decl., ¶24.)  But this compensation structure also is a structure for balancing crosstalk that uses capacitors, just like the compensation structure at issue here. (Eldering Decl., ¶¶22-23.)   Essentially, CommScope's expert admitted that compensation structures were known in the art as structures for balancing cross-talk, *e.g.*, using capacitors, and such a focus on the number of alleged layers of capacitors used misses this point.  *See Dyfan*, 28 F.4th at 1366 ("Claim terms 'need not connote a single, specific structure,' and may instead 'describe a class of structures' and still recite 'sufficiently definite structure' to not invoke § 112 ¶ 6.").  Given that the burden is on CommScope, and the only actual evidence supports Belden's position that "compensation structure" is a term of art referring to the use of capacitors to balance cross-talk, CommScope has failed to meet its burden.  *See id.* at 1366 ("In cases where it is clear that a claim term itself connotes some structure to a person of ordinary skill in the art, the presumption that § 112, ¶ 6 does not apply is determinative in the absence of more compelling evidence of the understanding of one of ordinary skill in the art.") (cleaned up).

CommScope also criticized Dr. Eldering's description of a "compensation structure" as a "circuit" because the compensation structures include metal frames and dielectric bodies, which CommScope apparently does not regard as part of a circuit.  But these are the elements that make real-world circuits with capacitors.  (Eldering Decl., ¶24.)  Indeed, CommScope's expert admitted as much, in acknowledging that "there is inherently capacitance and inductance associated with a metal lead frame because it is made of metal."  (*See* Locati Decl., ¶24.)

**D.**     Defendants' Sur-Reply Position

Belden's Reply misses two important points.  First, the plain language (and Belden's construction) is functional.  It reads: "compensation structure…being arranged to provide compensation signals…"  The other claim language adds no structure, but relates to the location. Second, the specification repeatedly describes this term as "functional."  D.I. 58, Ex. B, 8:52-53

("Each compensation structure has a specific function . . . ."), Abstract ("specific function"), 3:40-43 (same).

Belden's Reply cites the holding in the Dyfan case that means-plus-function does not apply if a term covers a sufficiently definite "class" of structure. The corollary is means-plus-function does apply when the term is not limited to a definite class of structure.

Belden's construction does not limit the term to a definite "class" of structure (e.g., capacitive plates). Belden's construction only recites "structure" that performs compensation—an unlimited construction covering anything that performs the function of compensation. Belden's Reply suggests "capacitors" is a class of structure, but Belden's construction is not limited to capacitors. Further, Belden's expert and opening section expressly argued this term also covers "inductors," not just capacitors. Belden Opening ("capacitors and/or inductors"). Neither Belden nor its expert argue inductors and capacitors are in the same "class" of structure. They are fundamentally different electronic components. J.A. Ex. 10 (hereinafter "Locati-2")[5], ¶23.

The intrinsic record identifies "classes" of structure other than capacitors. D.I. 58, Ex. B, 6:27-31 ("plug and jack may include various compensation structures"). For example, the specification lists a wire manager (or management bar) and a "lead frame." *Id.*, 3:62-4:3, 7:9-10, 7:26-27, 8:20-21. These are different classes than capacitors. Locati-2, ¶24.

Belden's expert is unhelpful. CommScope's point is not that nobody ever used this term, but that the term is functional and not limited to a specific class of structure.

---

[5] The Second Locati Declaration ("Locati-2") is included in the Joint Appendix at JA0250-JA0266.

## II.   **Term 2 – "located near contact points"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "located near contact points" (Claims 1, 3) | Not indefinite.<br><br>conductively connected less than 0.4 inches from the contact points or such other distance that balances cross-talk | Indefinite<br><br>If deemed not indefinite, then Plaintiff's construction should be rejected in favor of the following:  conductively connected less than 0.05 inches from the contact points |
| **Why Resolution Matters** | **Belden's Position**<br><br>Construction of this term relates to Defendants' invalidity arguments. | **CommScope's Position**<br><br>Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. |

### A.   Plaintiff's Opening Position

Belden's construction centers on how the claimed compensation structure simply must be connected near enough to the contact points in order to balance cross-talk.

The Specification of the Patent-in-Suit explains how locating compensation structures outside of the conductive path has several advantages, including "provid[ing] stable compensation signals relatively independent of the penetration and movement of the plug within the jack or external forces occurring when the two are mated" and being "relatively independent of the relative height of the contacts of the mated plug and jack."  (D.I. 58, Ex. B, 4:22-27.)  However, when located outside of the conductive path, the Specification explains that it must be located near enough to the contacts so that "there is only a minimal change in the phase of the signal due to propagation delay."  (*Id.*, 4:15-18.)  If located too far away, it would fail to balance cross-talk, *e.g.*, because larger distances "would introduce a larger phase delay" and undermine the balancing function.  (*Id.*, 4:18-21.; Eldering Decl., ¶¶22-24.)

And in explaining how near the compensation structures need to be in order to balance cross-talk, the Specification provides specific embodiments in which the compensation structures "are conductively connected less than 0.4 [inches] from the contact points, and preferably less than 0.1 [inches] from the contact points, and more preferably less than 0.05 [inches] from the contact points."  (D.I. 58, Ex. B, 5:11-15.)  The Specification also provides a detailed working example that includes dimensions the contacts and compensation structure.  (*Id.*, 7:37-8:22.)  These examples show compensation structures that are located immediately adjacent to the contacts, and none show compensation structures located so far away as to not be able to balance cross-talk. (Eldering Decl., ¶¶22-24.)

In the context of the surrounding claim language and Specification, a POSA would have readily understood how the claims require compensation structures that are near enough to balance cross-talk.  For example, claims 1 and 3 require a "compensation structure located near contact points … and being arranged to provide compensation signals ***that balance a selected amount of cross-talk generated in said connector***."  Thus, from the context of the Specification and the claims, "located near" should be construed as encompassing both the specific examples in the Specification and other distances that balance cross-talk.  Based on these specific detailed examples, a POSA would have reasonably understood the meaning of "located near."  (*Id.*, ¶24.)

By contrast, CommScope argues that the mere use of the common claim term "near" should somehow render the claims indefinite and not reasonably ascertainable by a POSA.  This is incorrect.  As the Federal Circuit has explained, "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement."  *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1347 (Fed. Cir. 2022) (stating that "patentees often use descriptive words to avoid a strict numerical boundary to the specified parameter").

11

Accordingly, the Federal Circuit has long held that the use of common claim terms like "near" does not render the claims indefinite, such as in light of how a POSA would reasonably ascertain the meaning of such common claim terms based on the intrinsic record. *See, e.g.*, *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1290-94 (Fed. Cir. 2017) (finding the claim term "*near*" in limitation reciting "displaying said characteristics … **near** said portions" was not indefinite); *PM Holdings, LLC v. Heart of Tex. Surgery Ctr., PLLC*, 2022 WL 1230272, at *6 (W.D. Tex. Apr. 26, 2022) (finding the claim term "**near**" in limitation reciting a stationary ambulatory surgical center not indefinite).  The same applies here.

B.      Defendants' Answering Position

In the context of these claims, the phrase "located near" is indefinite.  Claims 1 and 3 recite a "high frequency data connector" which carries high-frequency data signals.  The patent teaches that coupling in a connector is frequency-dependent, meaning that coupling changes depending on the frequency at which the connector operates.  D.I. 58, Ex. B, Abstract, 3:38-46, 4:28-34, 6:25-36.  The patent also explains that the distance between contact points and compensation structure should be "minimal" and provide "only a minimal change in the phase of the signal due to propagation delay."  D.I. 58, Ex. B, 4:18-21, 4:28-32.  The greater the distance, the greater the change due to phase delay and the worse the mutual inductance.  *Id.*; Locati Decl. ¶¶25-27.  Yet, Belden's construction applies to all high-frequency connectors regardless of their operating frequency.

The highest frequency connector disclosed in the patent is a Category 5 connector which operates at a maximum of 100 MHz.  D.I. 58, Ex. B, 3:3-33; Locati Decl. ¶25.  Thus, any disclosed distances between contact points and compensating plates only applies to connectors operating up to 100 MHz.  There is no disclosure of distances for connectors operating at higher frequencies, such as CommScope's accused Category 6 and 6A connectors operating up to 500 MHz.  For a

fixed distance, phase delays and mutual inductance for 500 MHz signals are significantly greater/worse than for 100 MHz signals, and thus what is "near" for 100 MHz is not also "near" for 500 MHz. *See* Locati Decl. ¶¶26-27.

The patent does identify distances—"less than 0.4" . . ., and preferably less than 0.1" . . ., and more preferably less than 0.05" from the contact points." D.I. 58, Ex. B, 5:11-17. But the patent does not equate any of those with the claim language "near," the figures do not identify the distance between any contact points and plates, and a POSITA would recognize that "near" for 100 MHz is not near for all higher frequencies. *See* Locati Decl. ¶¶27-28.

Belden's proposed construction is also indefinite. It seemingly sets an outer distance of 0.4" (regardless of frequency) but adds "or such other distance that balances cross-talk." Does this mean any distance less than 0.4" falls within the scope, or any distance so long as it "balances cross-talk"?

Belden's proposed construction also renders other claim language superfluous, redundant, and/or ambiguous. The claims already recite that the "compensation structure" is "arranged to provide compensation signals that balance a selected amount of cross-talk generated in [the] connector[.]" Interpreting the "located near contact points" to mean a distance that "balances cross-talk" adds nothing, except confusion, to the claim. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1237 (Fed. Cir. 2016); *Digital-Vending Servs, Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012); *see also* Locati Decl. ¶¶28-29.

CommScope believes the term is indefinite but points out that "less than 0.05" away" is the minimal distance (or the most "immediately adjacent" distance (Plaintiff Op. Position, *supra*, at 11)) disclosed in the patent.

C.    Plaintiff's Reply Position

Numerous cases have found that terms like "near" are not indefinite when the Specification provides sufficient details such that the meaning is reasonably certain to a POSA.  *See, e.g.*, *Niazi Licensing Corp.*, 30 F.4th at 1347 (stating that "patentees often use descriptive words to avoid a strict numerical boundary to the specified parameter"); *Mentor Graphics Corp.*, 851 F.3d at 1290-94 (finding the claim term "*near*" in limitation reciting "displaying said characteristics … *near* said portions" was not indefinite); *PM Holdings, LLC*, 2022 WL 1230272, at *6 (finding the claim term "*near*" in limitation reciting a stationary ambulatory surgical center not indefinite).

Here, the Specification explains how the compensation structures should be located near enough to the contacts so that "there is only a minimal change in the phase of the signal due to propagation delay," because larger distances would undermine the balancing function.  (D.I. 58, Ex. B, 4:18-21; Eldering Decl., ¶¶25-27.)   The Specification also provides specific detailed examples in which the compensation structures "are conductively connected less than 0.4 [inches] … 0.1 [inches] [or] less than 0.05 [inches] from the contact points."  (D.I. 58, Ex. B, 5:11-15.)  The Specification provides detailed examples that may be used by a POSA to determine how near is near enough to balance a selected amount of cross-talk.   (Eldering Decl., ¶¶28-29.)   The Specification discloses cross-talk reductions measured in decibels, such as 38, 40 or 60 decibels of reduction.  (*Id*.)  Based on the specific detailed examples in the Specification and standard electrical engineering equations, a POSA can reasonably calculate how near the compensation structures must be located in order to achieve a given reduction.  (*Id*.)  The effect of distance on phase delay may be readily calculated by using the detailed examples of the Specification and basic electrical engineering principles.  (*Id*.)

By contrast, CommScope's expert argued that the Specification is limited to "operate[] at frequencies *up to* 100 MHz."  (*See* Locati Decl., ¶¶26-27.)  But in reality, the Specification

specifically discloses "frequencies ***above*** 10 MHz and ***100 MHz***." (D.I. 58, Ex. B, 3:3-11; Eldering Decl., ¶29.) And CommScope's theories regarding Category 6 and 6A, which are ***cable*** standards, also miss the mark. The asserted claims are directed to ***connectors***, not cables, and the claims do not require the use of any specific category of cable. (*Id*.)

Because the Specification of the Patent-in-Suit provides detailed examples that allow a POSA to reasonably ascertain what is meant by "located near," the claims are not indefinite and the Court should adopt Belden's constructions.

### D.    Defendant's Sur-Reply Position

Belden's Reply suggests the specification resolves the issue. Belden missed the most important point. The specification teaches *three different limits* (less than 0.4, less than 0.1, less than 0.05). Belden assumes "near" refers to the broadest limit, but the specification does not say "near" refers to the broadest limit. A POSITA equally could conclude "near" refers to the preferred teaching of less than 0.05 inches. After all, the specification says the distance "should be minimal," and 0.05 is the minimal choice (hence CommScope's alternative construction). D.I. 58, Ex. B, 4:28-30. Thus, reading the claim in view of the specification, a POSITA does not know whether "near" refers to the preferred, intermediate, or broadest teaching. Locati-2, ¶¶25-27.

Belden's comment regarding Categories 6 and 6A standards is a red herring. Those standards also apply to cable connectors. Locati-2, ¶28.

In addition, the first part of Belden's construction (less than 0.4) interprets "near" in a quantitative (or absolute) sense, but Belden's second part (other distance that balances cross-talk) interprets "near" in a qualitative (or relative) sense. This acknowledges that a POSITA could understand the scope of "near" in different ways. The specification does not say near is both a relative and absolute term simultaneously.

### III.   Terms 3, 4, and 5 - "conductive path" Terms

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "conductive paths between connector terminals of said jack and connector terminals of said plug" (Claims 1, 3) | paths between the connector terminals of the plug, the contacts of the jack, and a cable connected to the connector terminals of the jack | the pathways that extend between the plug terminals and the jack terminals and include the contact points where the jack and plug contacts make contact with each other |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether compensation structure is located "outside said conductive carrying paths" as recited in a separate claim element. |

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said compensation structure … being located outside said conductive path carrying said high-frequency data signal" (Plaintiff)<br><br>"being located outside said conductive path carrying said high-frequency data signal" (Defendants) (Claims 1, 3) | the compensation structure is not located on the path between the plug, the contacts of the jack, and a cable connected to the jack | Not part of the main conductive signal-carrying path between the plug and jack terminals but may otherwise be connected to the main signal-carrying path |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non- infringement of asserted claims against Defendants, and also invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and the infringement contentions |

|  |  | is located outside the path as recited. |
|---|---|---|
|  |  |  |

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "capacitive coupling elements … being located outside of a conductive path between said jack and said plug" (Plaintiff)<br><br>"located outside of a conductive path between said jack and said plug" (Defendants)<br>(Claims 6, 12, 18, 19, 21) | the capacitive coupling elements are not located on the path between the plug, the contacts of the jack, and a cable connected to the jack | Not part of the main conductive signal-carrying path between the jack and the plug but may otherwise be connected to the main signal-carrying path |
|  | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. |

A.   Plaintiff's Opening Position

The three "conductive" path terms are addressed together given the importance of the term in determining whether a compensation structure is located **outside** the conductive path. Belden's constructions identify the three key points that define this main path as the path between (1) the plug, (2) the contacts of the jack, and (3) a cable connected to the jack.

The Specification explains that "[c]ompensation structure 90 includes capacitive plates" and is "placed on the rear side of cantilever spring contacts … and outside the path taken by the current that conveys the high frequency signal from the contact point of plug 10 to jack 30." (D.I. 58, Ex. B, 9:39-45.) The following annotated Figure 3 shows how (a) the conductive path (in red) extends (1) from a plug, (2) to the contacts of the jack, and (3) to a wire connected to the jack

connector terminals, while (b) the compensation structure 90 (in yellow) is located tangentially from the main conductive path.



The Specification further teaches a POSA how there can be **another** compensation structure 34 that is included in the connector system, and is located **on** the conductive path." (D.I. 58, Ex. B, 6:46-49, 9:39-40.)  This unclaimed compensation structure 34 includes a "dielectric body" through which the signal carrying lead frame 35 travels.  (*Id.*)  In contrast to claimed compensation structure 90, the Specification teaches a POSA that this unclaimed compensation structure 34 is located **on** "the high frequency signal paths from plug 10 to jack 30." (*Id.*, 9:38-45.)  The contrast between the locations of these two compensation structures confirms that "outside the conductive path" should read on compensation structure 90, but not read on compensation structure 34.  Belden's construction does this.

The Prosecution History of the Patent-in-Suit also confirms the Specification's teachings.  For instance, the patentee explained during prosecution how "the high-frequency data signal does not travel to or through the tips of the cantilever spring contacts" (where compensation structure 90 is located), "but rather follows a path from [1] the plug, to [2] a mid-point on the cantilever spring contacts and then on to [3] the cable connected to the other end of the cantilever spring

contacts." (D.I. 58, Ex. D, 8.)  Accordingly, a POSA would have reasonably understood how the conductive paths described in the Specification are best understood as the paths between the connector terminals of the plug, the contacts of the jack, and a cable connected to the connector terminals of the jack.

By contrast, CommScope's constructions of "conductive path" and "outside the conductive path" are inconsistent, ambiguous, and contradicted by the teachings of the specification. Although CommScope's proposed construction of "conductive path" uses the term "pathways," its proposed construction of "outside the conductive path" does not.  CommScope's proposed construction of "conductive path" also is open-ended because it suggests that the paths should "include the contact points," but does not define the path itself in any meaningful manner, thus injecting unnecessary ambiguity into the meaning of the claim limitations at issue.  And CommScope's construction of "outside the conductive path" (*i.e.*, "but may otherwise be connected to the main signal-carrying path") not only similarly injects unnecessary ambiguity into the claims, it appears to read on the unclaimed compensation structure 34, contrary to the Specification's teachings and even excluding even the preferred embodiments taught by the Specification.  *See, e.g.*, *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1326 (Fed. Cir. 2013) (holding that "a claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.").

Therefore, the Court should adopt Belden's construction and reject CommScope's proposal.

B.    Defendants' Answering Position

CommScope's construction follows the claim's plain meaning.  The "conductive path" is the path that conducts the signal-carrying current from the plug terminals to the jack terminals, which includes the plug-jack contact points.  As such, and consistent with the specification, compensation structure is "located outside of said conductive path" if it is connected to, but not part of, the main signal-carrying path (e.g., it is a tangential or dead-end path off of the main signal path, such as compensation structure 90).  *See* D.I. 58, Ex. B, 4:8-13, 9:35-48.  Stated another way, compensation structure is "located outside of said conductive path" if the conductive path from the plug terminals to the jack terminals taken by the current that conveys the high-frequency signal does not go through the compensation structure.

Belden's illustration (reprinted below) is an oversimplification of the conductive, signal-carrying path and what it means to be located outside such path.



Belden seemingly contends that everything located in a plug or located between the plug/jack contact points and the jack cable is part of the conductive path (and not located outside the conductive path) even if it is not conducting the signal-carrying current between the plug and jack terminals.

Belden's position has two problems.  First, it improperly limits "located outside the conductive path" to be locations that are near/at the tips of the jack contacts.  But the examiner rejected that argument, pointing out that "outside the conductive path" is not limited to locations at/near the tips. D.I. 58, Ex. C at 6-7; D.I. 58, Ex. D at 8-9; D.I. 58, Ex. E at 5-8.

Second, the Examiner found that compensation structures connected to the conductive signal-carrying path at locations Belden shades in red are located outside the conductive path. The Examiner found that Martin (D.I. 58, Ex. 8) and Merchant (D.I. 58, Ex. 9) each disclose compensation structure located outside the conductive path.  D.I. 58, Ex. C at 5-8; D.I. 58, Ex. E at 5-8.  As shown below, Martin's compensation structure (yellow) is connected to the plug cable/plug terminal but not part of the main signal-carrying path (shown in red):



D.I. 58, Ex. 8, 3:20-59, FIG. 1; *see also* FIG. 3; D.I. 58, Ex. C at 5-6; D.I. 58, Ex. E at 5-6.

Similarly, as shown below, Merchant's alternative compensation structures (19, 42) (yellow) are connected to intermediate portions of the jack contacts after the plug/jack contact points but are not part of the main signal-carrying path (shown in red):





D.I. 58, Ex. 9, 4:51-5:1; 5:24-42; *see also* FIGS. 1, 4-5; D.I. 58, Ex. C at 7-8; D.I. 58, Ex. E at 6-7.

Like Belden's at-the-tip plates, Martin's and Merchant's compensation structures are "located outside the conductive path" in that they are effectively dead ends coupled to, but not part of, the main conductive signal-carrying path. The only difference is that they are connected to different points along the path.

Belden originally disagreed with the Examiner but then gave up the argument. *See* D.I. 58, Ex. C at 5-7; D.I. 58, Ex. D at 8; D.I. 58, Ex. E at 5-7; D.I. 58, Ex. F at 3-5. There was no limiting

of the claims to Belden's proposed scope.  Thus, prosecution history establishes that "located outside the conductive path" is broader than Belden's proposal and that the claim must be construed to include the structures of Merchant and Martin.  *See Malvern Panalytical Inc. v. TA Instruments-Waters LLC*, 85 F.4th 1365, 1376 (Fed. Cir 2023) (the conclusion that the examiner's reading prevailed is a reasonable reading of the prosecution history where patentee abandons a one-time argument); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343 (Fed. Cir. 2009).

  C. <u>Plaintiff's Reply Position</u>

  CommScope's erroneous proposal of "not part of the main conductive signal-carrying path" eliminate the claims' requirement of where the compensation structure is "located" relative to the conductive path and replace it with just the concept of whether or not the compensation structure is itself "part of" the path.  CommScope's invitation also should be rejected because it is designed to broaden the claims for invalidity purposes by sweeping in all possible compensation structures except those that share the same conductors as (*i.e.*, are part of) the path itself.

  The claims require a "compensation structure" that is located outside of not just any "conductive path" as CommScope appears to argue.  Instead, the claims require that such "compensation structure" be located outside of a "conductive path ***carrying said <u>high-frequency data signal</u>***."  A POSA would readily understand that a conductive path carrying a high-frequency data signal is well known in the art as a transmission line.  (Eldering Decl., ¶30.)  In a transmission line, the conductive path is the path that carries an electromagnetic signal from one end to another end of the transmission line.  (Eldering Decl., ¶31.)  This path is illustrated as follows:



CommScope ignored the technology at issue in this case, *i.e.*, transmission lines carrying high frequency data signals, and argued based on mere direct current technology that "located outside the conductive path" is the opposite of being "part of the conductive path." (*Id.*) But in reality when transmitting high frequency electromagnetic signals, the signal does not follow all conductors, but instead propagates down the transmission line based on fundamental principles of physics. (Eldering Decl., ¶¶31-32.) Thus, there may be electrically connected conductors that are nonetheless located outside of the path of the high-frequency data signal. (*Id.*) Those locations are outside a conductive path carrying high frequency data signals. (*Id.*)

CommScope's theory also runs counter to the prosecution history. In reality, Belden never made and gave up an argument during prosecution. Instead, Belden successfully argued against the obviousness combination. (*See* D.I. 58, Ex. C, 5-7; D.I. 58, Ex. D, 8; D.I. 58, Ex. E, 5-7; D.I. 58, Ex. F, 3-5.) Under such circumstances there is no prosecution disclaimer. *See Malvern Panalytical Inc.*, 85 F.4th at 1376; *Ecolab, Inc.*, 569 F.3d at 1343.

Finally, CommScope ignored the fact that, in addition to how claim language clearly calls for a compensation structure that is located outside the conductive path, the Specification also discloses a different compensation structure that is located ***on*** the conductive path. (D.I. 58, Ex. B, 6:46-49, 9:39-40.) Since CommScope's proposed construction is so broad that it would sweep

in this second an different compensation structure disclosed in the specification even though the claim language specifically claims the other compensation structure that is located ***outside***, not ***on***, the conductive path, it should be rejected.

      D.    <u>Defendants' Sur-Reply Position</u>

CommScope's constructions follow the claim language.  Belden, however, omits the word "conductive" for the terms reciting "located outside [the] conductive path," and omits the word "terminals" recited in claims 1 and 3.

CommScope's constructions also follow the specification.  Being "not part of" (or relatively/significantly independent of) the "main conductive signal-carrying path" comes from the specification.  D.I. 58, Ex. B, 4:10-13, 9:39-49.  The remainder of CommScope's construction clarifies that compensation structure (such as plates) can be "connected to" the path and also "located outside" it, something that Belden agrees with.

Belden's argument rests on its annotated, red-and-yellow shaded illustration of FIG. 3, with a proposed construction that would mean ***any*** compensation structure located in the red-shaded area is located ***on*** (not "located outside") the conductive path.  Not true.  CommScope showed examples of compensation structures in the red-shaded area that are "located outside" the conductive path (Martin and Merchant).  Belden does not deny (i) Martin's and Merchant's compensation structures are in what Belden considers the red-shaded areas, and (ii) the Examiner stated such structures were "located outside" the conductive path.  D.I. 58, Ex. C, 6-8; D.I. 58, Ex. E, 5-9; D.I. 58, Ex. 8; D.I. 58, Ex. 9.  Those compensation structures are "located outside" the conductive path like Belden's yellow-colored plates.  Locati-2, ¶¶30-33.

Belden says it "never made and gave up an argument in prosecution."  Not true.  In prosecution, Belden argued Martin's and Merchant's compensation structures were located on, and not located outside, the recited conductive path.  D.I. 58, Ex. D, 8-9.  The examiner

disagreed, and Belden (i) cancelled all claims rejected as anticipated by Martin and (ii) dropped

the "on the path" argument to make different arguments vis-à-vis Merchant.  D.I. 58, Ex. D, 9;

D.I. 58, Ex. E, 5-9; D.I. 58, Ex. F, 2-5.

IV.     **Term 6 - "said compensation structure being conductively connected to at least some of said contacts"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said compensation structure being conductively connected to at least some of said contacts" (Claims 1, 3) | the compensation structure is electrically connected to contacts of the plug or jack when mated | The compensation structure is directly or indirectly electrically connected to contacts of the plug or jack before the plug or jack are mated to each other |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether electrical connection can be indirect and also clarify the meaning of "electrically isolated" as used in other claim elements |

A.     Plaintiff's Opening Position

Consistent with the intrinsic record, Belden's construction specifies electrical connection

to the plug or jack **when mated**, since the compensation structure balances cross-talk during

operation of the connector when mated.  The claims themselves require mating of the plug and

jack.  (*See* D.I. 58, Ex. B, 12:48-51 ("**a plug** constructed for coupling in a mating arrangement with

**a jack**").)  The claim language describes the compensation structure as located near the conductive

paths formed between the jack and plug, *i.e.*, when mated.  (*See id.*, 12:53-56.)  This requirement

is discussed repeatedly in the Specification.  (*See id.*, 4:44-47 (the "connector system achieves

higher performance goals **when a higher performance plug is mated to a higher performance**

26

*jack* by providing the compensation structures for counter-coupling."); 4:22-25 ("*when the two are mated*."); 11:41-43("*After plug 10 and jack 30 are mated*").)

By contrast, CommScope again invites the Court to commit factual and legal errors by importing an additional, unnecessary, and unclaimed requirement into the claims that the connection must occur "*before* the plug or jack are mated to each other" to try to make-up a non-infringement defense that does not exist. The Court should decline this invitation. *See, e.g.*, *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("[W]e will not … import a limitation from the specification into the claims"); *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do *not* read limitations from the specification into claims; we do *not* redefine words.").

Further, CommScope's proposed "before" construction disregards the surrounding limitations of the claims that require *a plug constructed for coupling in a mating arrangement with a jack* and confirm that what matters is the condition after mating, not before. *See IGT v. Bally Gaming Int'l, Inc.*, 659 F.3d 1109, 1117 (Fed. Cir. 2011) ("We caution that claim language must be construed in the context of the claim in which it appears. Extracting a single word from a claim *divorced from the surrounding limitations* can lead construction astray.").

The Court should thus adopt Belden's construction.

B.    Defendants' Answering Position

There are two disputes: (1) whether "conductively connected" includes both direct and indirect electrical connections between the compensation structure and the contacts; and (2) whether the conductive connection must be present *before* a jack is mated to a plug.

On the first issue, the plain language of the claim supports a construction that includes an indirect electrical connection. The claim does not recite a "direct" or "physical" connection. Instead, it recites a "conductive" connection, which occurs when there is a conductive pathway

27

between the contacts and the compensation structure.  The disclosed embodiments include indirect connections between the contacts 46-60 and the plates 92A-102A (compensation structure) via crossover structures 95 and 97:



*See* D.I. 58, Ex. B, 9:30-33, FIG. 4.

Also, during prosecution, the Examiner found that capacitor plates were "electrically connected" to jack contacts even though not directly connected.  *See* D.I. 58, Ex. C at 7; D.I. 58, Ex. 9, 4:51-5:5.

On the second issue, the intrinsic record supports CommScope's construction.  Claims 1 and 3 do ***not*** require that the plug and jack are mated.  They recite that the plug is "constructed for coupling in a mating arrangement with a jack" (i.e., the plug can be mated to a jack).  The language in claims 1 and 3 regarding the location of the compensation structure relative to the conductive path proves nothing since claims 6-21, which are directed to ***only*** the jack, include similar language about location relative to the path.  *E.g.*, D.I. 58, Ex. B, Claim 6 at 13:33-36.  Further, none of the patent figures shows a plug mated to a jack.  The only figure with a plug (FIG. 1), shows the plug side-by-side (i.e., unmated) with a jack.

Belden's citations to the specification about plugs and jacks mating prove nothing.  There is no debate that plugs and jacks mate.  Belden's citations actually support CommScope because

they show that that the patent owner knew how to state/claim a mated plug-jack arrangement.  In contrast, the remainder of the specification neither includes that qualifying language nor depicts a mated relationship.

Belden's proposed construction would cover jacks having compensation structure conductively connected to the jack contacts ***only*** after the plug and jack are mated.  There are at least two problems with that position.

First, such structure is not disclosed in the patent.  Every illustrated embodiment of Belden's "claimed compensation structure" has the compensation structure connected to the jack contacts before mating with the plug, and the disclosure repeatedly describes how the jack contacts are physically and electrically connected to the compensating plates.  *See e.g.*, D.I. 58, Ex. B, 7:28-35; 10:59-66; 11:31-40.

Second, Belden's position conflicts with the clear teaching in the specification.  The Summary of the invention states that compensation structures provide stable compensation signals that are relatively independent of the plug penetration or movement or other forces occurring when the two are mated.  *Id.*, 4:22-25, 9:58-61.  This is opposite to Belden's construction which focuses entirely on the configuration after the two are mated and covers embodiments where the connection between contacts and compensation structure is entirely dependent on plug penetration or movement of the plug relative to the jack.

C.    <u>Plaintiff's Reply Position</u>

Admittedly, the goal of CommScope's proposed construction is to exclude "jacks having compensation structure[s] conductively connected to the jack contacts ***only*** after the plug and jack are mated." (Defendants' Ans. Position, *supra* at 27-29.)  But in proposing this construction, CommScope ignores how, in reality, the claim language is broad enough to cover situations that occur both ***before*** and ***after*** mating.  And even if CommScope's products only infringe after

mating, momentary infringement is still infringement.  *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("It is well settled that an accused device that sometimes, but not always, embodies a claim nonetheless infringes.") (cleaned up).

And in any event, CommScope's theory that every illustrated embodiment allegedly has the ***before*** limitation is erroneous because it would improperly import limitations from the specification.  *See Kara Tech.*, 582 F.3d at 1348 ("[W]e will not … import a limitation from the specification into the claims"); *Thorner*, 669 F.3d at 1366 ("We do ***not*** read limitations from the specification into claims; we do ***not*** redefine words.").

CommScope also misconstrues how the Summary describes an embodiment in which "compensation signals are ***relatively*** independent of the plug penetration or movement."  (D.I. 58, Ex. B, 4:60-67.)  Contrary to CommScope's erroneous theory, this example only describes ***relative*** independence, not the complete independence one would expect if the compensation structure were connected "before the plug or jack are mated to each other."  Such a statement cannot rise to the level of a clear disavowal or disclaimer.  *See Thorner*, 669 F.3d at 1366.

By contrast, Belden's construction is consistent with the intrinsic record.  The claims themselves specify mating of the plug and jack.  (D.I. 58, Ex. B, 12:48-51.)  And the Specification repeatedly confirms that the compensation structure operates when the plug and jack are mated.  (*See id.*, 4:22-25 ("***when the two are mated***."); 11:41-43("***After plug 10 and jack 30 are mated.***").)  Accordingly, the Court should adopt Belden's construction, which is consistent with the claim language and intrinsic record, and reject CommScope's erroneous attempt to rewrite the claims.

D.    Defendants' Sur-Reply Position

Belden wrongly suggests CommScope's construction imports a limitation.  CommScope applies the plain claim language.  By antecedent basis ("said contacts"), Term 6 refers to the earlier limitation about the plug and jack with "a plurality of contacts":

**1**. A high frequency data connector comprising:

a plug constructed for coupling in a mating arrangement with a jack both including a plurality of contacts arranged to provide conductive paths for carrying a plurality of high-frequency data signal; and

a compensation structure located near contact points forming said conductive paths between connector terminals of said jack and connector terminals of said plug, said compensation structure being conductively connected to at least some of said contacts, being located outside said conductive path carrying said high-frequency data signal and being arranged to provide compensation signals that balance a selected amount of cross-talk generated in said connector;

**Term 6 ➡**

Per the earlier limitation, the plug and jack are not yet mated.  The claim recites "a plug constructed **for** coup**ling** in a mating arrangement with a jack," not "coupl**ed** in a mat**ed** arrangement."

Belden's "when mated" refers to the result after the mating step is performed.  But this is not a method claim.  The claim describes the properties of the structures themselves ("said compensation *structure*").  CommScope's construction recites before mating to clarify the claims recite structure, not the result of a mating step.

CommScope's construction does not exclude the compensation structure *remaining* coupled to the jack or plug after mating so long as the compensation structure itself meets the claim (i.e., before the additional step of mating is performed).  The claims allow for additional steps (mating) so long as they do not remove a claim limitation.  Belden's construction, however,

31

allows for a compensation structure that is never coupled to the contacts of the plug or jack as the plug and jack are recited in the claim, but rather only "when mated."  This wrongly treats the claim as a method claim.

Belden misunderstands the specification.  Figure 1 follows the claim language, showing plug 10 for coupling in a mating arrangement with jack 30, i.e., before being mated:



Figure 3A shows jack 30 including the compensation structure 90 (yellow), and Figure 3B shows an exploded view:



Note the compensation structure (yellow) is coupled to the jack contacts (red) without any plug (i.e., before mating).  Belden's specification quotes merely confirm the compensation structure remains coupled after mating.

**V.**     **Term 7 - "[a compensation structure] being arranged to provide compensation signals that balance a selected amount of cross-talk generated in said connector"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "[a compensation structure] being arranged to provide compensation signals that balance a selected amount of cross-talk generated in said connector" (Claims 1, 3) | Not indefinite.<br><br>the compensation structure generates compensation signals that balance a pre-determined amount of cross-talk between conductors | Indefinite<br><br>If deemed not indefinite, then Plaintiff's construction should be rejected in favor of the following: the compensation structure is arranged to provide compensation signals that balance all cross-talk generated in the connector. |
| **Why Resolution Matters** | **Belden's Position** | **CommScope's Position** |
| | Construction of this term relates to Defendants' invalidity arguments. | Resolution on construction may impact non-infringement of all asserted claims against Defendants, and also their invalidity, including under Section 112. |

**A.**     Plaintiff's Opening Position

Belden's construction focuses on how the compensation structures simply balance a pre-determined amount of cross-talk between conductors.

The Specification teaches a POSA how the "design of the connector system minimizes cross-talk and thus reduces errors in data transmission." (D.I. 58, Ex. B, 3:48-50.)  It also provides objective guidance for achieving cross-talk reduction, including selecting parameters of the compensation structure, such as the angle between the compensation structure and the contacts, and relative orientations of various parts of the compensation structure.  (*Id.*, 11:9-17.) ("Compensation structure 90A may have capacitive plates ... aligned at a selected angle a with

respect to the orientation of the respective spring contacts …, or aligned at a selected angle with respect to each other … The relative orientations of the plates are selected to vary the amount of compensation (i.e., counter-coupling effects).")  It further explains that these parameters are selected and adjusted to "establish cross-talk at the desired level for the particular connector," which is an RJ-45 connector.  (*Id.*, 11:49-52.)

The invention is applicable to many different types of connectors with different jack interfaces (*e.g.*, "RJ-22, RJ-11 and RJ-45"), different numbers of conductors (*e.g.*, "4-conductor, 6-conductor and 8-conductor"), operating at different frequencies (*e.g.*, "10 MHz and 100 MHz"), and having different amounts of cross-talk.  (*Id.*, 2:34-31, 3:4-8.)  Based on the objective teachings of the Specification, a POSA would reasonably understand how the compensation structures would be arranged, for each different type of connector, to generate compensation signals that balance a pre-determined amount of cross-talk, and that the examples in the Specification provide sufficient detail to tune the compensation structure appropriately.  *See Via Vadis, LLC v. Blizzard Entm't, Inc.*, 815 Fed. App'x. 539, 544 (explaining that "predetermined has a plain and ordinary meaning—defined in advance").  Because the Specification provides objective teachings regarding the scope of the selected amount of cross-talk, the claims are not indefinite.  (*See* Eldering Decl., ¶¶27-29.)

The Court should thus adopt Belden's construction.

B.      Defendants' Answering Position

The claim language is indefinite. The patent uses "balancing" in connection with "offsetting" and "counter-coupling."  *E.g.*, D.I. 58, Ex. B, Abstract, 3:12-22, 3:39-50.  But there is no objective standard showing what amount of offsetting/counter-coupling constitutes "balanced." Nor is there any objective standard showing what "selected amount" of counter-coupling is required for the claimed compensation structure to "balance a selected amount of cross-talk" that

is "generated in the connector."  For example, do "balancing" and "balancing a selected amount" simply mean "reducing/offsetting/counter-coupling" by "an/any/some amount"?  The specification provides no indication, and the claim does not use such different prefatory language. *See* Locati Decl. ¶¶30-33.

Furthermore, it is unclear what is the "selected amount" to be balanced.  For example, in one passage, the patent states that the claimed compensation structures "are designed to provide counter-coupling for capacitive imbalances created in plug 10."  D.I. 58, Ex. B, 12:13-44.  In other passages, the patent states that the claimed compensation structure balances the additive capacitive or inductive coupling created by or in other compensation structures or the jack spring contacts. *Id.*, 3:45-48, 6:31-36, 9:15-19.  Belden's proposal to use "predetermined" instead of "selected" provides no further clarity.

Belden argues that a "connector system" (i.e., a plug-jack-combination with all of their compensation structures in a connector) may be designed to "minimize[] cross-talk" in a connector to a "desired level."  But the claims recite (and cover) a compensation structure (not a connector system) that has a specific location and arrangement for balancing a "selected amount."  And the specification never identifies what the "desired level" is or what the "selected amount" is to be "balanced."

Belden's proposed construction creates still more ambiguity.  For example, why does Belden replace "cross-talk generated *in said connector*" with "cross-talk *between conductors*?"  Neither claim 1 nor claim 3 recite "conductors."  And what are the "conductors" that Belden is referring to?

The term is indefinite.  *See* Locati Decl. ¶¶30-33.  To provide objective guideposts, the Court would need to clarify that the balancing is not just of "any" amount but of "all" or "substantially all" cross-talk that is "generated in the connector."

C.     Plaintiff's Reply Position

CommScope offers a false choice between either indefiniteness or requiring balancing *all* cross-talk in the connector.  But in reality, the Specification provides a POSA with a detailed blueprint for designing compensation structures that can balance an amount of crosstalk that is either selected or pre-determined in advance by a designer of a particular system, and is *never* limited to balancing *all* cross-talk.  *See Via Vadis, LLC*, 815 Fed. App'x. at 544 (explaining that "predetermined has a plain and ordinary meaning—defined in advance"); *Masimo Corp. v. Sotera Wireless, Inc.*, No. 2022-1415, 2023 WL 6307959, at *4 (Fed. Cir. Sept. 28, 2023) (construing "predetermined" "to include a calculation made from a predetermined formula"); *Freeny v. Aruba Networks, Inc.*, No. 2:14-CV-01031-WCB, 2015 WL 5766265, at *2 (E.D. Tex. Sept. 29, 2015) (construing "'predetermined proximity distance' to mean simply: 'a distance selected in advance.'").

The Specification explains how crosstalk arises when "twisted pairs are untwisted and flattened out" leading to "electromagnetic coupling."  (D.I. 58, Ex. B, 8:57-66.)  In one specific example of the plug and jack of Figure 1, "there is a capacitive imbalance due to the de-twisting region" "on the order of 312 [femto farads]" which is the unit of measure for capacitance.  (*Id.*, 12:36-39.)  To compensate for this amount of crosstalk, the Specification provides detailed examples of compensation structure 90 in Figures 2A through 2H, with the exact dimensions and thicknesses of compensation structures made of a specific metal.  (*Id.*, 7:37-8:22.)  The Specification explains that these "dimensions are a starting point for obtaining desired capacitances and inductances" and "require adjustments to obtain the required performance."  (*Id.*,

36

8:15-22.)  In one example, the compensation structures provide "a desired goal of 60 [decibels] cross-talk isolation."  (*Id*., 12:30-32.)  Other examples in the Specification provide 40 or 38 decibels of crosstalk reduction.  (*Id*., 12:36-44.)  A POSA would readily understand how these detailed examples in the Specification provide all the information needed to translate a selected reduction in crosstalk into a specific compensation structure geometry, using no more than these detailed examples and standard engineering principles.  (Eldering Decl., ¶¶34-43.)

Using the detailed blueprint and examples of the Specification, a POSA designing a jack in accordance with the claim invention would have readily selected the amount of cross-talk to be balanced, and then readily determine the appropriate dimensions needed.  (*Id*.)  For example, a POSA would select between 38, 40, or 60 decibels or cross-talk reduction and use the specific examples set forth the in the Specification.  (*Id*.)  Or, a POSA would readily select another amount of cross-talk reduction, and readily change the dimensions of the compensation structures accordingly based on well-known electrical engineering principles that relates the area of a capacitor to the amount of capacitance to be balanced (measured in farads).  (*Id*.)  And contrary to CommScope's alternative proposal, none of these examples eliminate **all** crosstalk, but instead only reduce crosstalk by the selected, pre-determined amount, *i.e.*, 60, 40 or 38 decibels.  (*Id*.)

Because these objective teachings would have provided reasonable certainty to a POSA, the claims cannot be indefinite.  *See Via Vadis*, 815 F. App'x 539 at 544 ("the patent's intrinsic evidence renders the meaning of the term 'prespecified parameters' sufficiently clear").  The Court should thus adopt Belden's construction and reject CommScope's.

D.    Defendants' Sur-Reply Position

It helps to return to the basic question: Does the claim, read in light of the prosecution history and specification, provide reasonable certainty for the scope of "a *selected* amount of cross-talk"?  The term "selected amount" cannot merely mean "any amount"—that gives no meaning to

"selected."  Neither party argues the claim itself or prosecution explains the "selected" amount.

The claim, for example, does not say to select an amount between two values.  This leaves the

specification.  The specification teaches a "desired goal of 60 dB cross-talk isolation."  But neither

party's construction proposes limiting the claim to this example.   Thus, the specification lacks

certainty about the full scope of "a selected amount of cross-talk."  Locati-2, ¶¶34-35.  It does

suggest there must be a "desired goal," but that refers to the desires of an engineer, not the structure

of the plug or jack.

## VI.   Terms 8 and 9 – "cantilevered springs" terms

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said contacts arranged to form cantilever springs mounted on said compensation insert" (Plaintiff) /<br><br>"to form cantilever springs mounted on said compensation insert" (Defendants) (Claim 1) | the contacts of the jack are mounted on one end and form springs | to form springs that are mounted on the compensation insert, the springs being cantilevered (i.e., each spring being supported at only one end) |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. |

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said contacts including cantilever spring contacts" (Plaintiff) /<br><br>"including cantilever spring contacts" (Defendants) (Claim 12) | the contacts of the jack are mounted on one end and form springs | A "cantilever spring contact" is a spring contact that is cantilevered (i.e., being supported at only one end) "cantilever spring contacts" means more than one cantilever spring contact, each cantilever spring contact being a spring contact that is cantilevered (i.e., being supported at only one end). |

|  | **Belden's Position** | **CommScope's Position** |
|---|---|---|
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution of this issue will clarify whether structure identified in the prior art and infringement contentions include cantilevered spring contacts as recited. |

A.    Plaintiff's Opening Position

Belden's constructions of the two "cantilever" limitations, which are addressed together herein because they present the same issue, center on how the "cantilever springs" are simply mounted on one end and form springs.

The Specification teaches that "[t]he jack may include a compensation insert including the contacts arranged to form *cantilever springs mounted* on the compensation insert." (D.I. 58, Ex. B, 5:1-3.)  The mounting of one end of the cantilever springs is achieved by "solder[ing] to a printed wiring board." (*Id.*, 7:17-20.)  The free ends of the cantilever spring contacts are inside a "plug-receiving cavity 32, which provides space for cantilever spring contacts 46." (*Id.*, 6:43-46.)  As the plug is received within the plug receiving cavity, the cantilevered springs are deformed downward and "the plug contacts … individually contact the corresponding cantilever spring contacts." (*Id.*, 6:19-23.)  In other words, the Specification teaches that the contacts of the jack are mounted on one end and form springs.

By contrast, CommScope asks the Court to import "being supported at only one end" into the claims in an attempt to manufacture a non-infringement defense, if the free end of the cantilever spring contacts were, at any time, deformed downward to such an extent to make contact with (*i.e.*, be supported) a portion of the jack body.  Yet, while the Patent-in-Suit does not include a figure

showing the final downward position of the cantilever spring contacts after insertion of the plug,

a final, supported position is nonetheless evident from the preferred embodiments.  For example,

the following annotated Figure 3C (below) illustrates how a sloped back portion of the dielectric

insert 34 (highlighted in yellow) is positioned to provide a counter-support to the cantilever spring

contacts, which causes downward deformation (red arrow) of the spring contacts, after the plug is

inserted:



Thus, CommScope's construction would exclude this Figure 3C embodiment because the

free end of the spring contact would be supported on the sloped portion shown in yellow.  The

Court should thus adopt Belden's construction and reject CommScope's invitation to adopt a

construction that would excludes a preferred embodiment taught by the Specification.  *See Accent*

*Packaging,* 707 F.3d at 1326.

        B.      <u>Defendants' Answering Position</u>

CommScope's proposal is consistent with the specification and plain-and-ordinary

meaning of "cantilever," while Belden's proposal seeks to capture springs that are not cantilever

springs, e.g., springs that are supported at both ends both before and after a plug is inserted into the jack.[6]

The specification repeatedly uses the word "cantilever" to describe the jack contact springs, and each and every "cantilever" spring contact is mounted/supported at one end with its other end entirely unsupported. *See*, *e.g.*, D.I. 58, Ex. B, 4:14-15; 4:32-33; 5:1-5; 6:14-24; 6:43-53; 7:17-20; 7:31-8:22; 9:14-19; 9:33-35; 9:39-41; 10:9-12; 10:53-56; FIGS. 2, 3-5A.

This consistent use—and disclosure—of "cantilever" spring contacts that are supported at one end only is consistent with the ordinary meaning of the term "cantilever," i.e., "supported at one end." *See*, *e.g.*, J.A.Ex.-2, JA0153 (defining "cantilever" as "a projecting structure, such as a beam, that is supported at only one end"); *RFR Indus., Inc. v. Century Steps, Inc.*, No. 3-98-CV-0988, 1999 U.S. Dist. LEXIS 15212, at *8, *10 (N.D. Tex. Sep. 23, 1999) (ruling "the defining characteristic [of 'cantilever'] is that the object is supported only at one end" and "a cantilever must necessarily have a free end"); *Minebea Co. v. Think Outside, Inc.*, No. 01CV771, 2002 WL 34455511, at *3-4 (S.D. Cal. Aug. 17, 2002). *See also* Locati Decl. ¶36.

Belden's proposal—being "mounted on one end"—ignores the defining characteristic of a cantilever, which is having only one supported end and also one unsupported end. Consider a deck extending from a house and screwed into a deckplate on the house at one end with the other end resting on vertical supports. Such a deck is not a "cantilever" regardless of whether the other end is screwed into (i.e., mounted) or simply resting on the supports.

---

[6] In connection with Term 6 (claim 1), Plaintiff proposes to construe a limitation as meaning when "the plug and jack are mated" instead of "before" they are mated as proposed by CommScope. If the Court agrees with Plaintiff as to that term in claim 1, then the Court should likewise adopt the when-mated requirement for these terms in claim 1 also.

Belden erroneously argues that CommScope is seeking to manufacture a non-infringement defense.  To the contrary, CommScope is seeking a construction consistent with its plain meaning and use in the patent.

Belden also argues that the ends of compensation structure 90 (which per the specification and claims is "connected to" the "contacts") supposedly might rest on a "counter-support" of the dielectric insert 34, and thus CommScope's position supposedly reads out a preferred embodiment. But the patent makes no such disclosure, and Belden's expert does not join in the argument. Further, that argument is irrelevant as claim 12 is specifically directed to a jack and doesn't recite the contacts' condition *after* mating with a plug.

C.    Plaintiff's Reply Position

Much like Term 6, this term presents a temporal issue.  But here, CommScope proposed a one-eighty by seeking to limit the claims to conditions occurring *after* mating.  In other words, CommScope proposed the opposite construction it took regarding Term 6.  This proves Belden's point regarding both terms – the claims are broad enough to cover both mated and unmated, or *before* or *after* mating, conditions.  *See Broadcom*, 732 F.3d at 1333.

In addition, CommScope's proposed construction is wrong because it is nonsensical to suggest that a cantilever spring ceases to be a cantilever spring once a load is applied.  (Eldering Decl., ¶44.)  Indeed, and as illustrated below, the very purpose of a cantilever spring is to bear a load with the free end during use:



CommScope's proposal also would exclude the primary embodiment of the Specification, illustrated below, in which the cantilever spring contacts are designed to rest on the dielectric insert.  (Eldering Decl., ¶45.)



By resting on the dielectric insert, the cantilever spring contacts have a consistent position relative to the dielectric insert so that the jack balances the same amount of cross-talk when the plug and jack are mated.  (*Id.*, ¶46.)  Thus, the cantilever spring contacts are a textbook example of a cantilever spring which uses its free-end to bear a load.  (*Id.*, ¶47.)

The Court should reject CommScope's construction that excludes this embodiment and adopt Belden's.  *See Accent Packaging*, 707 F.3d at 1326.

43

D.    Defendants' Sur-Reply Position

The core dispute is not "temporal" but whether "cantilever" means the spring is supported at "only one end" (CommScope) or "one end" (Belden).  Belden appears to use "one" in an open-ended manner, i.e., one or more.  That is not the ordinary meaning of "cantilever" and renders Belden's construction meaningless. The claim already recites the spring has a "mounted" end, which means the spring is necessarily supported (and mounted) at one end.

A picture illustrates the dispute.  Figure 3C shows a cantilever spring supported at only one end with the other end free:



Consider a modified version where the dielectric extends to the spring and plate:



44

Although still supported at one end, the spring is not a "cantilever spring" because it is supported at the other end. Stating a structure is supported at one end (Belden) is not enough because it leaves open that the structure is also supported at the other end, which negates the defining characteristic of "cantilever."

Belden says CommScope's construction limits the claim to "conditions occurring after mating" and means a "cantilever spring ceases to be a cantilever spring once a load is applied." Not true. CommScope's construction states neither of these. Belden says CommScope excludes an embodiment. But the embodiment (Fig. 3C, above) *is* supported at only one end. Belden says the spring is designed to rest on the dielectric (34) "when the plug and jack are mated." It is undisputed that the patent does not say this, and a POSITA would know that is not true. *See*, *e.g.*, Locati-2, ¶¶36-39. Belden wrongly suggests that CommScope has opposite positions for Term 6 and 11. CommScope only stated the need for consistency between these terms given Belden's construction of Term 6 to be "when mated."

Lastly, the plain meaning of "cantilever" refers to how the structure is "supported" (at only one end). Belden's expert relies on a definition using "supported." Eldering Decl., ¶44 ("spring *supported* at one end"). Belden never disagrees on this point. CommScope's construction correctly states: "each spring being ***supported*** at ***only*** one end." Locati-2, ¶¶36-39.

## VII.   Term 10 - "said compensation structure includes capacitive balancers"

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said compensation structure includes capacitive balancers" (Plaintiff) "capacitive balancers" (Defendants) (Claim 3) | the compensation structure includes one or more capacitors | Capacitor plates. |

|  | Belden's Position | CommScope's Position |
|---|---|---|
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution of this issue will clarify whether structure identified in the prior art and infringement contentions are compensation structures that include capacitive balancers as recited. |

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "capacitive coupling elements" (Claims 6, 12, 18, 19, 21) | capacitor elements | Capacitor plates |
|  | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and infringement contentions comprise capacitive coupling elements as recited. |

A.   Plaintiff's Opening Position

The two "capacitive" limitations are addressed together because they present the same issue – whether the claims should be limited to "plate" embodiments – which CommScope erroneously asks the Court to adopt in an attempt to again manufacture a non-infringement defense.

The Specification describes, in general terms, the use of compensation structures that include capacitive balancers and/or capacitive coupling elements.  (D.I. 58, Ex. B, 5:1-6, 5:11-17.)

46

The Specification provides different embodiments of these capacitive structures, including various plate and printed circuit board embodiments. (*Id.*, 4:5-10, 60-67.) In one embodiment, the Specification describes a "compensation structure" that includes several "capacitive plates" that are "separated by a dielectric." (*Id.*, 9:15-22.) In some embodiments the plates are parallel, and in other embodiments "need not be arranged in parallel." (*Id.*, 11:7-15.) In still other embodiments, the "compensation structure" is "located on a printed circuit board" or includes "fins." (*Id.*, 4:6-67, 4:5-8.)

What all these embodiments have in common is that they use capacitors. Because capacitors are electrical components known even beyond those skilled in the art, using Belden's constructions "the jury will be able to intelligently determine the questions presented" – *e.g.*, whether or not a capacitor is present in the Accused Products. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).

By contrast, CommScope's construction would improperly import limitations from the Specification and should be rejected. *See Kara Tech.,* 582 F.3d at 1348; *Thorner,* 669 F.3d at 1366. Any reliance on a single sentence from the Specification that states "[t]he compensation structure **may** include capacitive balancers (**or** plates)" is misplaced because the use of the disjunctive "or" supports the interpretation that capacitive balancers are alternatives to plates, not defined as being limited to just plates. *See, e.g., Schumer v. Laboratory Comput. Sys., Inc.*, 308 F.3d 1304, 1311 (Fed. Cir. 2002) ("We have consistently interpreted the word 'or' to mean that the items in the sequence are alternatives to each other."); *Accent Packaging*, 707 F.3d at 1326.

Therefore, the Court should adopt Belden's construction.

B.    Defendants' Answering Position

These phrases are addressed separately because they have different supporting evidence.

1.      **Term 10(a): "capacitive balancers" (claim 3)**

CommScope's construction is supported by the specification which uses "capacitive balancers" and "capacitive plates" interchangeably.   "Balancers" appears only once in the specification: "The compensation structure may include capacitive balancers (or plates)."  D.I. 58, Ex. B, 5:11-12.  The parenthetical equates "balancers" to "plates."  Also, the specification repeatedly associates the plates with the function of balancing or reducing imbalance.  *See id.*, 4:8-10, 9:16-21, 11:47-50, 12:42-44.

These facts distinguish Belden's cited cases.  *Accent Packaging, Inc. v. Leggett & Platt, Inc.* concerned the interpretation of a claim to exclude a preferred embodiment, which is the opposite of the situation here, and not whether terms were used interchangeably in the patent.  707 F.3d 1318, 1326 (Fed. Cir. 2013).  *Schumer v. Laboratory Computer Systems, Inc.* involved the use of "or" in the clear disjunctive sense with a series of different elements.  308 F.3d 1304, 1311 (Fed. Cir. 2002).

Belden erroneously argues that the parenthetical "(or plates)" means that "plates" are alternatives to, and not synonymous with, "balancers."  The specification repeatedly describes the plates as functioning to balance crosstalk.  Further, the specification has other examples of parentheticals that use the word "or" to equate two words describing the same structure.  *See e.g.*, D.I. 58, Ex. B, 4:6-7 ("conductive plates (or fins)"), 4:65-67 ("printed circuit board (or printed wiring board)").  And the specification does not have parentheticals when "or" is used in the alternative/disjunctive.  *E.g.*, *id.*, 1:22-24, 2:10-11, 6:2-6, 9:15-20, 11:8-15.

Belden's reference to structures located on a printed circuit board is puzzling.  The passage that Belden actually cites says that "[t]he compensation structure is ***not*** located on a printed circuit board (or printed wiring board)."  *Id.*, 4:65-67 (emphasis added).

### 2.   Term 10(b): "capacitive coupling elements" (claims 6, 12, 18, 19, 21)

The specification uses this term and "capacitor balancers" interchangeably.  *See, e.g.*, D.I. 58, Ex. B, 4:5-6 ("system includes a ***compensation structure*** with a plurality of parallel conductive ***plates***"); 5:5-6 ("The ***compensation structure*** may include ***capacitive coupling elements***."); 9:20-21 ("***Compensation structure*** 90 includes ***capacitive plates*** 92, 94, 96, 98, 100 and 102 …."); *see also In re Personalweb Techs., LLC*, No. 18-md-02834, 2019 WL 3859023, at \*5 (N.D. Cal. Aug. 16, 2019) (Claim Construction Order), *aff'd*, 2021 WL 3557196, at \*4 (Fed. Cir. Aug. 12, 2021) (interpreting words the same when used interchangeably in the specification treating them as a single concept).

Belden's proposed construction for this term appears to conflict with its proposed construction for Term 17.  Here, Belden asserts that "capacitive coupling elements" means "capacitor elements," whereas in Term 17 Belden interprets this term as "capacitors."

Other claims show that "capacitive coupling elements" cannot mean capacitors.  For example, claim 10 recites "spring contacts number 4 and 6 are capacitively coupled by ***two*** of said capacitive coupling elements."  If "elements" means capacitors, then this claim would require that contacts 4 and 6 be capacitively coupled by two capacitors.  But there is no disclosure of that.  Instead, as shown below (and consistent with CommScope's construction), contacts 4 and 6 are capacitively coupled by two plates, one plate connected to contact 4 (shown in blue) and the other plate connected to contact 6 (shown in yellow).



See also, e.g., claim 12 which similarly recites that two contacts are coupled by two capacitive coupling elements.

C.   Plaintiff' Reply Position

When addressing Term 17, CommScope admitted that "[t]he term 'capacitor' by definition *includes a dielectric*." (Defendants' Ans. Position, *infra* at 84.)  Yet here, CommScope proposed to limit "capacitive coupling elements" to just conductive plates of a capacitor, *excluding the dielectric altogether*.  A "*capacitive* balancer" *must* include a dielectric in order to provide capacitance.  (Eldering Decl., ¶¶48-50.)  Because CommScope's construction would exclude a capacitor, it would read out the word "capacitive" from these claim terms.  Indeed, CommScope admitted that "the specification repeatedly describes the plates as functioning to *balance* crosstalk," which can only occur if a complete capacitor is used, not just the plates *without a*

50

***dielectric***, as CommScope proposes. (*Id.*, ¶49.)  By contrast, Belden's positions are consistent because they correctly account for the fundamental fact that capacitors ***must*** have dielectrics.  (*Id.*, ¶¶49-50.)

CommScope's claim construction theory appears to be driven by its desire to exclude PCB-based compensation structures from the scope of the claims.  But as discussed above, a POSA would have readily understood that PCB-based compensation structures also use capacitors plates, such as the PCB-based plate capacitors of Figure 2.  (*Id.*)  The Specification describes numerous types of capacitive coupling elements, including those with parallel plates, non-parallel plates, fins, PCBs and others.  (D.I. 58, Ex. B, 4:5-10, 60-67; 9:15-22; 11:7-15.)  The common thread running through all these embodiments is that they are all capacitors, which is the name used by a POSA to describe structures that provide capacitance.  (*Id.*)  CommScope's proposals erroneously invite the Court to ignore the word "capacitive" both in the claims and Specification, and should be rejected, and the Court should adopt Belden's proposed construction, which accounts for "capacitive."

        D.    <u>Defendants' Sur-Reply Position</u>

**"capacitive balancers"**

Belden's Reply does not dispute the critical point: the specification uses parentheticals to indicate two terms are interchangeable: "capacitive balancers (or plates)", "conductive plates (or fins)", "printed circuit board (or printed wiring board)."  D.I. 58, Ex. B, 5:11-12, 4:6-7, 4:65-67.

**"capacitive coupling elements"**

Belden's argument about CommScope excluding dielectrics or a capacitor makes no sense. CommScope's construction—"capacitor plates"—means plates ***of a capacitor***.  Further, neither party's proposed construction mentions dielectrics.  Belden's reliance on Term 17 is puzzling.

Belden proposes a different construction of "capacitive coupling elements" in Term 17 (switching to "capacitors").

## VIII.   Term 11 - "said jack comprising … a plurality of contacts juxtaposed side-by-side and arranged in a single row"

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said jack comprising … a plurality of contacts juxtaposed side-by-side and arranged in a single row" (Plaintiff)<br><br>"a plurality of contacts juxtaposed side-by-side and arranged in a single row" (Defendants)<br>(Claims 6, 12, 18, 19, 21) | the contacts of the jack are arranged in parallel where the contacts of the jack mate with a plug | Two or more closely positioned contacts that are arranged side-by-side and in a single row along the entire length of the contacts |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution of this issue will clarify whether structure identified in the prior art and infringement contentions comprise contact springs juxtaposed and arranged as recited. |

### A.   Plaintiff's Opening Position

Belden's construction focuses on how the contacts of the jack are arranged in parallel, where the contacts of the jack mate with a plug, so that the plug can properly mate with the jack.

The Specification explains that, in order to properly mate "an RJ-45 type ***plug*** has eight conductive elements located side-by-side" and "[a]n RJ-45 type ***jack*** also has eight conductive elements located side-by-side." (D.I. 58, Ex. B, 2:45-49.) These matching, "parallel, side-by-side

contacts" mate the plug and jack. (*Id.*, 6:25-26.) The contacts are shown in Figures 1 and 1A and highlighted below in yellow:



As shown above, when the plug is received by the jack, "comb structure 80 … maintains a uniform separation between spring contacts" of the jack, limiting how deep the plug can mate with the jack. (*Id.*, 9:53-56.) Because of this limited depth, the plug can only make contact with the jack contacts as deep as the comb structure (shown in red):



Whether or not the jack contacts have the same arrangement along the entire length of the contacts (*i.e.*, past the comb structure) is irrelevant to the functioning of the claimed invention, and therefore the claims should be construed to require this arrangement only where relevant, *i.e.*, where the contacts of the jack mate with a plug in front of the comb structure. *See, e.g.,*

53

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, 822 F.3d 1312, 1321-22 (Fed. Cir. 2016) (limiting the scope of how the juxtaposed components had to be positioned so that they carried out a function the specification indicated was critical to the claimed invention).

By contrast, CommScope seeks to rewrite the claims to try to make-up a non-infringement defense that does not exist by attempting to require unnecessary uniformity along the ***entire*** length of the contacts.  CommScope's proposal further misses the mark because it reads out the preferred embodiment and therefore cannot be correct, as shown in the following annotated Figure 4D:



First, the contacts 48 and 58 (in red) are clearly shorter than the rest of the contacts.  Next, the contacts 52 and 54 (in yellow) are also different lengths as the others and turn upwards (52) and downwards (54) on the right ends.  Because of these differences, these contacts are ***not*** arranged side-by-side and in a single row ***along the entire length*** of the contacts.  Thus, CommScope's proposed construction cannot be correct.  *See Accent Packaging*, 707 F.3d at 1326.

Therefore, the Court should adopt Belden's construction.

B.     Defendants' Answering Position

CommScope's construction is based on the plain meaning of the language, whereas Belden seeks to rewrite the claim.  The claim recites that the "contacts" are juxtaposed side-by-side "in a single row."  Belden's construction would rewrite this to require that only certain portions/parts ("where the contacts of the jack mate with a plug") of the contacts are juxtaposed side-by-side in

a single row.  Not only is this different, but it makes no sense.  The jack contacts mate with the plug at "contact points."  *E.g.*, D.I. 58, Ex. B, Abstract, 9:35-38, claim 1.  Thus, under Belden's construction, the claim would only require that the contact points be juxtaposed side-by-side in single row.  But the claim requires that the "contacts" (not just certain small portions thereof) be juxtaposed side-by-side and arranged in a single row.

CommScope's construction also is the only one consistent with the prosecution history.  In its final response to secure allowance of claims having the disputed claim language, Belden described the prior art Merchant jack (illustrated below) as "having **eight contacts arranged in two rows of four**."  D.I. 58, Ex. F at 4 (contacts 50 circled in green).



D.I. 58, Ex. 9, FIGS. 1, 2.  Merchant's eight contacts include plug-contacting portions that extend side-by-side in a common plane (i.e., tail portions (56) with tail ends (58)) and other portions that are in two different rows (i.e., insulation displacement portions (52)) shown in red and blue below:



FIG. I

*See* D.I. 58, Ex. 9, 3:23-37, FIGS. 1, 2, 4A-5B.  As such, and consistent with the claim language,

Belden explained that a "row" of "contacts" is determined by looking at the contacts along their

entire lengths and not just the portions that would mate with the plug.  Belden's brief ignores this

prosecution history.  And its proposed construction contradicts it.  *See, e.g.*, *Fenner Invs., Ltd. v.

Cellco P'ship*, 778 F.3d 1320, 1323 (Fed. Cir. 2015) ("Any explanation, elaboration, or

qualification presented by the inventor during patent examination is relevant, for the role of claim

construction is to 'capture the scope of the actual invention' that is disclosed, described, and

patented.") (internal citations omitted); *Iridescent Networks*, *Inc. v. AT&T Mobility*, *LLC*, 933 F.3d

1345, 1352-53 (Fed. Cir. 2019) (rejecting argument that prosecution history is only relevant when

it demonstrates disclaimer).

Belden's argument that CommScope is reading out a preferred embodiment misses the

mark.  The Court is not required to construe each and every claim in a manner to avoid excluding

the preferred embodiment.  *See SIMO Holdings, Inc. v. H.K. uCloudlink Network Techs., Ltd.*, 983

F.3d 1367, 1378-80 (Fed. Cir. 2021); *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316

(Fed. Cir. 2010); *PSN Illinois, LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008).

Further, Belden's exclude-preferred-embodiment argument ignores the fact that the dashed

square 91A in its illustration (blue below) surrounds "the compensation structure" of the patent:



D.I. 58, Ex. B, 11:18-30, FIG. 4D. Consistent with CommScope's proposal, the straight-line

contact end portions preceding that compensation structure that Belden colored in red and yellow

extend parallel and side-by-side along their respective lengths.

Belden's *Howmedica* case is inapposite. *Howmedica* was construing what it meant for two

"juxtaposed" items to be "***placed at relative locations*** such that the effectiveness" of each is

"maintained while in the presence of the other." *Howmedica Osteonics Corp.*, 822 F.3d at 1316,

1321-22.  The issue was whether the district court properly construed "relative locations" to be "essentially midway" as described in the specification.  *Id*.

C.    <u>Plaintiff's Reply Position</u>

CommScope erroneously invites the Court to misread the prosecution history, including Belden's arguments.  In reality, Belden never "explained that 'row' of 'contacts' is determined by looking at the contacts ***along their entire lengths***."  (Defendants' Ans. Position, *supra* at 57.)  Instead, Belden quoted the Merchant reference verbatim, which discloses that "[t]he connector body can receive ***eight contacts arranged in two rows of four***."  (D.I. 58, Ex. 8, 3:22-23.)  And Merchant supports Belden's position.  Just like the claimed jack contacts, which are arranged in parallel where it matters, *i.e.*, where the contacts of the jack mate with a plug, Merchant's two rows of terminal contacts are arranged in parallel where it matters, *i.e.*, at the bottom where they connect, but not in the middle where they bend and meander.  This is shown in CommScope's own annotation, reproduced below:



FIG.1

As depicted above, the red and blue rows of terminal contacts are only arranged in parallel at their bottom portions, where they make contact, and are not arranged in parallel in their upper portions where they bend and cross-over.  In other words, Merchant's terminal contacts are not arranged "in a single row along the entire length."  Instead, they are arranged in a single row, where they mate with the terminal connectors and it matters, consistent with Belden's construction.

In addition, annotated Figures 4B and 4D confirm that CommScope's proposed construction would erroneously read out the preferred embodiment from the claims, because these contacts have various bends and turns, and are not arranged "in a single row along the entire length."  (Eldering Decl., ¶51.)



By contrast, Belden's construction tracks the claim language and the Specification, and focuses on the requirement that the jack properly mate with a plug. The claims do not require, and the preferred embodiments do not have, a side-by-side orientation along the *entire* length of the contacts. Instead, the contacts are arranged in parallel, where the contacts of the jack mate with a plug, which is where it matters to the functioning of the jack and plug. The Court should adopt Belden's construction and reject CommScope's erroneous attempt to rewrite the claims.

### D.   Defendants' Sur-Reply Position

Belden contends that this term should be interpreted to require only certain portions of the contacts be juxtaposed side-by-side (i.e., where they "mate with the plug" or "where it matters"). The claim recites "contacts", not "portions" of contacts.

Belden's construction is inconsistent with its statements about the Merchant reference during prosecution. Merchant shows "contacts 50" having "tail *portions* 56" (orange below) that mate with a plug:



FIG.I

D.I. 58, Ex. 9, 3:23-33, Fig. 1.  If, as Belden now says, the focus is on where the contacts mate,

Merchant would disclose contacts arranged "in a single row."  But that is not what Belden told

the Patent Office.  Belden said Merchant discloses "eight contacts arranged in *two* rows of

four"—which is only true if one considers the entire length of the contacts.

## IX.    Term 12 - "a cantilever spring contacts" term

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "a cantilever spring contacts . . . . having a mounted end and a moveable end; and at least two of said spring contacts . . . connected to said moveable ends" (Claim 6, 18, 19, 21) | Not indefinite.<br><br>"cantilever spring contacts . . . having a mounted end and a moveable end; and at least two of said spring contacts . . . connected to said moveable ends" | Indefinite<br><br>If deemed not indefinite, then Plaintiff's construction should be rejected in favor of the following: construe consistent with "cantilever spring contacts" in claim 12. |
|  | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term relates to Defendants' invalidity arguments. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. |

A.    Plaintiff's Opening Position

Belden seeks judicial correction of the obvious typographical error "**a** cantilever spring

contact**s.**"  Belden's proposed judicial correction corrects this typographical error by removing the

erroneous indefinite article "a" so that the limitation reads "cantilever spring contacts."

A court may judicially correct an "obvious minor typographical or clerical error" in a claim

where 1) the error is evident on the face of the patent, and 2) the intrinsic evidence shows that the

proposed correction is not subject to reasonable debate.  *Pavo Sols. LLC v. Kingston Tech. Co.,*

*Inc.*, 35 F.4th 1367, 1373-78 (Fed. Cir. 2022).

This typographical error is evident from the face of the patent.  *See UUSI, LLC v. United*

*States*, 131 Fed. Cl. 244, 265 (2017) (finding "**a** voltage signal**s**" to be a "facially apparent

grammatical error").   And the correction is not subject to reasonable debate because the

surrounding claim language confirms that the "contacts" are plural.  The limitation immediately

following the error recites plural "said cantilever spring contact**s**" and then the claim refers to "at

least **two** of said spring contact**s**."  *See, e.g., Ultimax Cement Mfg. Corp. v. CTS Cement Mfg.*

*Corp.*, 587 F.3d 1339, 1352-53 (Fed. Cir. 2009) (correcting a missing comma); *Inventio AG v.*

*Thyssenkrupp Elevator Ams. Corp.*, 5 F. Supp. 3d 665, 672-673 (D. Del. 2013) (correcting

misspelled "hail" to "hall"); (Eldering Decl., ¶¶31-34.).

Therefore, Belden respectfully requests the Court construe the claims to correct this

obvious typographical error.

B.    Defendants' Answering Position

Belden does not dispute that the claim language, as written, is indefinite.  Instead, it asks

the Court to make a correction (i.e., delete the word "a") to fix an alleged typographical error.

As a starting premise, this Court should not rewrite claims but, instead, take them as they

are written.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1115 (Fed. Cir.

2002).  The Court may only "fix" alleged typographical errors that are, without reasonable debate, obvious on the face of the patent and fixable in only one way.  *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003).  The request is not appropriate here.

First, Belden's proposed correction (remove "a") is one that Belden previously made vis-à-vis claim 12 (column 13, line 61) by way of a Certificate of Correction filed with the Patent Office.  *See* D.I. 58, Ex. B, 31.  That Belden made this change to claim 12 but not to any other claims suggests that Belden intentionally wanted claims 6, 18, 19 and 21 to read differently.

Second, there is another possible correction: Keep the article "a" and make each immediately successive "cantilever spring contacts" singular (i.e., delete the final "s").  This would be consistent with the subsequent recitation to such structure having "a mounted end" and "a moveable end" and then "at last two contacts" having "moveable ends."

The patent suggests that the "a" is not a typographical error, and there is an alternative fix.  *See* Locati Decl. ¶¶34-36.  Thus, the Court should not correct the error.  *See*, *e.g.*, *Novo Indus., L.P.*, 350 F.3d at 1354 (explaining that court may not correct an error unless "the correction is not subject to reasonable debate"); *United Cannabis Corp. v. Pure Hemp Collective*, No. 18-cv-01922, 2019 WL 10301524, at *3 (D. Colo. Feb. 19, 2019) (explaining that court may not correct an error unless it is "subject to only one arguable correction"); *see also GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00413, 2020 WL 6559435, at *17-18 (E.D. Tex. Nov. 6, 2020) (refusing to correct a patent claim where there were at least two reasonable corrections); *Nite Glow Indus. v. Cent. Garden & Pet Co.*, No. 12-4047, 2016 U.S. Dist. LEXIS 43838, at *11-14 (D.N.J. Mar. 30, 2016) (refusing to change "said prongs" to "said prong"); *Worlds, Inc. v. Activision Blizzard, Inc.*, No. 12-10576, 2014 U.S. Dist. LEXIS 32216, at *27-28 (D. Ma. Mar. 13, 2014) (not correcting alleged error

where there was a "reasonable debate" as to whether the error was apparent on the face of the patent).

C.    Plaintiff's Reply Position

Judicial correction is plainly warranted.  The first requirement for judicial correction is that the error be "obvious," and CommScope and its expert point to no evidence suggesting that the error is anything but obvious.  *See Novo Indus., L.P.,* 350 F.3d at 1355.  Indeed, CommScope's expert repeatedly refers to "***the*** error," suggesting that it was readily apparent even to him.  (*See* Locati Decl., ¶36.)

Nonetheless, to avoid judicial correction, CommScope suggested that the error could be corrected in more than one way, including by making the spring contacts singular throughout the claim.  However, the claims later recite "at least ***two*** of said spring contacts" confirming that the spring contacts must be plural, not singular.  CommScope failed to account for this, which makes its alternative correction untenable.  In addition, CommScope's proposal would contradict the Specification, which is directed to connectors that are based on twisted ***pairs*** of wires, which must always have at least two (*i.e.*, a plural number) of contacts.  (Eldering Decl., ¶¶54-55.)  As a result, these terms are not indefinite.  The meaning is reasonably certain to a POSA, who would understand that the indefinite article "a" should be removed so that the limitation reads "cantilever spring contacts."  (*Id.*)  This error is self-evident on the face of the patent and the appropriate correction is not subject to reasonable debate.

D.    Defendants' Sur-Reply Position

Belden ignores a critical fact: Belden's certificate of correction.  Belden cites no caselaw that a Court should correct an issue when the patentee: (1) previously identified the same issue in a certificate of correction, (2) intentionally corrected one claim, and (3) did *not* correct the

64

present claims.  The public is entitled to rely on Belden's certificate of correction and reasonably

conclude there is no obvious error in the present claims.  Locati-2, ¶¶40-41.

**X.**    **Term 13 - "at least two of said spring contacts having capacitive coupling elements electrically connected to said moveable ends of said at least two spring contacts"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "at least two of said spring contacts having capacitive coupling elements electrically connected to said moveable ends of said at least two spring contacts" (Claims 6, 12, 18, 19, 21) | The moveable ends of at least two of the spring contacts are connected to capacitive coupling elements | At least two of the cantilever spring contacts include capacitive coupling elements that have an electrically conductive connection to, and move with, their respective moveable ends |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement. | Resolution on construction may impact non-infringement of the asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and infringement contentions meet this limitation. |

**A.**    Plaintiff's Opening Position

The claims require that at least two of the spring contacts have capacitive coupling

elements electrically connected to moveable ends of at least two spring contacts.  Belden's

construction centers on how the moveable ends of at least two of the spring contacts are connected

to capacitive coupling elements, and is consistent with the Specification, which provides an

example where moveable ends of six spring contacts are connected to six capacitive coupling

elements.  (D.I. 58, Ex. B, 9:14-28.)

By contrast, CommScope's construction of "move with, their respective moveable ends"

is contrary to the Specification's teachings, which explain how in the preferred embodiment, the

capacitive coupling elements can be moved and adjusted *after* the plug and jack are mated. But after mating, the contacts cannot move, while the compensation structures can move (*see* Section VI, *supra* at 38-41, explaining that the contacts are held downward by the plug after mating). For example, the Specification explains that "*[a]fter plug 10 and jack 30 are mated*, the position of one plate relative to the adjacent plate *can be adjusted by varying the overlap between the plates*." (D.I. 58, Ex. B, 11:41-43.) The Specification also explains how this independent movement of the capacitive coupling elements when mated allow for "an adjustable overlap, for example, to be modified for different types of plugs." (*Id.*, 11:46-52.) Thus, CommScope's construction excludes the preferred embodiment and should be rejected. *See Accent Packaging*, 707 F.3d at 1326.

B.    Defendants' Answering Position

A plain reading of the claim language supports CommScope's construction. The claims with the disputed language, which are directed only to a jack, recite that two of the spring contacts possess or include (i.e., "contacts having …") capacitive coupling elements and that those coupling elements are electrically connected to the contacts' moveable ends. J.A. Ex. 3, JA0162 (defining "have" as "to possess or own; hold for use; contain"); J.A. Ex. 2, JA0154 (defining "have" as "To be in possession of" or "To possess or contain as a constituent part: *a car that has an automatic transmission*"); J.A. Ex. 4, JA0168 (defining "have" as "to be in material possession of; own"); J.A. Ex. 5, JA0174 (defining "have" as "to hold in possession"). Contacts "having" capacitive elements means that the capacitive elements are formed together with (or are a part of or included in) the contacts such that when the contacts' moveable ends move, the capacitive coupling elements will move with them. Belden's construction only requires that the moveable ends be electrically connected to the capacitive elements, thus writing out the requirement that the contacts "hav[e]" the capacitive coupling elements.

The specification further supports CommScope's construction.  In every embodiment, jack contacts have the plates connected thereto so when the contact ends move the plates move with them.  The specification repeatedly states that the contacts are connected to the plates.  D.I. 58, Ex. B, 7:31-33, 7:58–8:12, 9:22-33,10:59–11:2.  The Summary also describes this as one of the features of the preferred embodiment.  *Id.*, 4:60-62.  With this arrangement, the jack provides compensation that is not dependent on penetration or movement of a plug, a feature touted in the Summary of the invention.  *Id.*, 4:23-25.

Belden's criticism of CommScope's construction, based on the excerpt in Column 11 of the specification, is flawed.  First, it misstates CommScope's construction.  CommScope's position is that the claims require that when the contact moveable ends move so do the coupling elements (because the contacts have/include the coupling elements).  This does not eliminate structure in which the coupling elements could be adjustable relative to the moveable ends.  Second, the quoted excerpt refers to the design process in which a designer can vary the positions (i.e., angle and amount of overlap) of the plates relative to each other and to the contact springs to vary the coupling between the plates.  It does not mean, and the patent does not suggest, that in a final product a person move the plates after a plug is inserted.  Belden's own expert does not even make this argument.

Third, Belden's criticism ignores the claim language.  The excerpt discusses a mated arrangement between the plug and the jack.  However, the claims with the disputed language are directed only to a jack.  As such, the recited language must be present on the jack independent of what occurs when a plug is mated with the jack (and consistent with every embodiment disclosed in the specification).  In other words, the recited jack contact springs must have an electrical

connection to the coupling elements when unmated to a plug.  The specification does not support a contrary construction.

C.    Plaintiff's Reply Position

In an RJ-45 connector system, such as is at issue here, movement occurs when the plug is plugged into jack.  (Eldering Decl., ¶57.)  The cantilever spring contacts must move to allow the plug to fill the plug receiving cavity.  (*Id*.)  In a PCB-based embodiment, such as CommScope's accused products, because the board typically is fixed in position, the capacitive coupling elements on the board would not move when the plug and jack are mated.  (*Id*.)  Accordingly, CommScope's proposed construction is another erroneous attempt to exclude PCB-based embodiments of capacitive coupling elements by rewriting the claims to require that the claimed capacitive coupling elements move.

To get there, CommScope resorted to grammatical errors in an attempt to rewrite the claims to switch what moves, such that the capacitive coupling elements are moveable, not the cantilever spring contacts.  CommScope erroneously truncated the object of the verb "having" to just the "capacitive coupling elements," and then applied a cherry-picked dictionary definition of "have" to mean "possession."  But the complete object of the verb ***having*** is "capacitive coupling elements ***electrically connected to said moveable ends of said at least two spring contacts***."  Notably, the end of the full claim term reiterates "at least two spring contacts," showing that this claim term explains how the contacts and capacitive coupling elements are related to each other.  Indeed, a more appropriate definition of "have" from CommScope's own dictionary is "[t]o occupy a particular relation to."  (J.A. Ex. 2, JA0154.)  The claim describes the ***relationship*** of the contacts to the capacitive coupling elements, namely that the "capacitive coupling elements" are "electrically connected to said moveable ends of said at least two spring contacts," as stated in Belden's construction.  There simply is nothing about being "electrically connected" to the spring

68

contacts that would require the capacitive coupling elements to move.  Immovable objects are "electrically connected" to movable objects all of the time.  For example, a battery in a drone is "electrically connected" to the propellor motors without the battery needing to rotate along with the propellers or the motor.

The Court should adopt Belden's natural reading of the claims and reject CommScope's erroneous attempt to rewrite the claims to require movement of the capacitive coupling elements.

D.    Defendants' Sur-Reply Position

CommScope is willing to narrow the dispute.  CommScope's main point is the claim language "spring contacts *having* capacitive coupling elements" means the spring contacts *include* the capacitive coupling elements.  Belden objects to CommScope's clarifying point that the capacitive coupling elements "move with" the moveable ends.  CommScope is willing to delete "move with" from its construction.

The plain language supports CommScope.  The claim uses "having" twice:

**6**. A connector providing counter coupling including a plug and a jack having a plug receiving cavity, said jack comprising:

a plurality of contacts juxtaposed side-by-side and arranged in a single row;

said contacts including a cantilever spring contacts mounted to extend into said plug receiving cavity, said cantilever spring contacts having a mounted end and a moveable end; and

**Term 13 →** at least two of said spring contacts having capacitive coupling elements electrically connected to said moveable ends of said at least two spring contacts and located outside of a conductive path between said jack and said plug, said capacitive coupling elements providing capacitive coupling.

The plain reading of the first use of "having" is that spring contacts physically have mounted and moveable ends, i.e., these are part of (included in) the spring contact.  Equally, the spring contacts include the capacitive coupling elements—"having" must have the same meaning.

Belden's construction gives no meaning to "having."  Compare how Belden's construction (right) repeats most of the claim language (underlined) but omits the ***italicized*** claim language (*having* and *electrically*):

| Claim | Belden |
|---|---|
| ***spring contacts having*** capacitive coupling elements ***electrically*** connected to said moveable ends of said at least two spring contacts | The moveable ends of at least two of the spring contacts are connected to capacitive coupling elements |

By the plain language, a specific part of the claimed jack (the spring contacts) must have (i.e., include) the capacitive coupling elements compared to some other part of the jack.

## XI.   Terms 14 and 15 – "numbered 1- 8 seriatim" terms

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said plurality of contacts include eight connector terminals numbered 1- 8 seriatim" (Claims 7, 18) | the eight contacts each include a connector terminal and are sequentially arranged from 1 to 8 | Terminals of eight of the contacts are numbered and arranged in sequential order from 1 to 8 |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and infringement contentions meet this limitation, as well as limitations on other claims reciting features associated with certain of the numbered connector terminals. |

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said plurality of contacts include eight contacts numbered 1-8 seriatim" (Claim 10) | the eight contacts are sequentially arranged from 1 to 8 | The contacts are numbered and arranged in order from 1 to 8 |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury | Resolution on construction may impact non-infringement of the asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and infringement contentions meet this limitation, as well as the additional limitation in this claim that "contacts 4 and 6 are capacitively coupled by two of said capacitive coupling elements." |

A.    <u>Plaintiff's Opening Position</u>

These two "plurality of contacts" limitations are addressed together because they present the same issue, which is the meaning of "numbered 1-8 seriatim."

Belden's construction focuses on how "numbered 1-8 seriatim" simply means that the eight contacts are sequentially arranged from 1 to 8, serving as reference points when the claims later refer to specific contacts by number.  For example, claims 7 and 18 both recite that "said ***spring contacts number 1 and 3*** are capacitively coupled," and claim 18 further recites that "said ***spring contacts number 3 and 5*** are capacitively coupled."  And claim 10 recites that "said ***spring contacts number 4 and 6*** are capacitively coupled."  Belden's construction of "sequentially arranged from 1 to 8" allows for evaluating these claim terms involving numbered contacts.

By contrast, CommScope's construction requires numbering of the connector terminals and not the spring contacts.  This does not make sense within the full context of the claims, which later refer to "***spring contacts*** number 1 and 3," "***spring contacts*** number 3 and 5" and "***spring***

71

*contacts* number 4 and 6." CommScope's insistence that the ***connector terminals*** be numbered would improperly inject unnecessary ambiguity into the meaning of these numbered spring contacts, and should be rejected in favor of Belden's construction.

B.    Defendants' Answering Position

CommScope's construction gives a plain and ordinary meaning to all of the words in the claims. Claims 7 and 18 both recite that the "contacts include eight connector terminals numbered 1-8 seriatim." (Term 14). That is, the contacts include **eight connector terminals** numbered and arranged in sequential order from 1 to 8. J.A. Ex. 2, JA0157 (defining "seriatim" as "One after another; in a series."). Claim 10, in contrast, recites that the "contacts include eight contacts numbered 1-8 seriatim" (Term 15), which requires that the **contacts** be numbered and arranged in sequential order from 1 to 8. *Id.*

Belden's constructions have at least two flaws. First, Belden is rewriting the language in claims 7 and 18 (Term 14). While the claims recite "**eight connector terminals** numbered 1-8 seriatim," Belden's construction requires that "the **contacts** … are sequentially arranged from 1 to 8." The Court may not rewrite claims through claim construction. *See Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 782 (Fed. Cir. 2010) ("[W]e do not redraft claims to contradict their plan language in order to avoid a nonsensical result."); *see also Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("[C]ourts may not redraft claims, whether to make them operable or to sustain their validity" especially when "claims are susceptible to only one reasonable interpretation . . . ."). And the Court must give effect to the fact that the different claims recite different structures: "eight connector terminals numbered 1-8 seriatim" versus "contacts numbered 1-8 seriatim." *See CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co., KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of [] different terms in the claims connotes different meanings.").

72

Belden attempts to justify its rewrite by pointing to other claim language reciting that "contacts number 1 and 3 [or 3 and 5] are capacitively coupled." To the extent that this other language creates any ambiguity, Belden authored the claims and cannot rewrite them now as part of claim construction. *See Chef Am., Inc.*, 358 F.3d at 1374 ("[W]e construe the claims as written, not as the patentees wish they had written it."); *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 494 (D. Del. 2012). Moreover, such a rewrite is not merely a typographical fix because the language is clear, and an alternative "fix" is plainly apparent: change the subsequent recitations of "contacts number 1 and 3 [or 3 and 5] are capacitively coupled" to "connector terminals number 1 and 3 [or 3 and 5] are capacitively coupled." *See Novo Indus., L.P.*, 350 F.3d at 1354 (an alleged typographical error can only be corrected if "the correction is not subject to reasonable debate"); *GREE*, 2020 WL 6559435, at *17-18 (a court cannot correct an error where there are at least two reasonable corrections and no way to discern which is proper). And neither party is asking for that.

Second, Belden's constructions omit any reference to the "numbered 1-8 seriatim" recitation. The word "numbered", in any form, is absent.

C.    Plaintiff's Reply Position

CommScope's proposal would appear to limit the claims to contacts or terminals "arranged" in a single line. But in reality, the Specification discloses eight contacts that connect to eight connector terminals, which in both cases may be numbered 1-8 seriatim, *i.e.*, sequentially arranged from 1 to 8. As depicted below, the eight contacts are sequentially arranged from 1 to 8, and the eight connector terminals are also sequentially arranged from 1 to 8:



As shown above, the contacts are arranged in a single line (red) and the connector terminals are arranged in two lines (blue). The term "numbered 1-8 seriatim" covers both these configurations, whether on one line or two lines. The following depiction illustrates how both the one line and two line arrangements are sequentially arranged from 1 to 8.

$$1\ 2\ 3\ 4$$

$$5\ 6\ 7\ 8$$

$$1\ 2\ 3\ 4\ 5\ 6\ 7\ 8$$

What this claim term is doing is limiting the claims to jacks that have eight spring contacts and eight connector terminals, and not the "4-conductor, 6-conductor … types, commonly referred to as RJ-22, RJ-11." (D.I. 58, Ex. B, 2:35-38.) CommScope's erroneous attempt to use convoluted

definitions of "numbered" and "seriatim" to concoct a non-infringement defense should be rejected.  There is nothing in the claims or the Specification that requires the contacts to be arranged in a straight line.  They only need to be arranged in order.

  D. <u>Defendants' Sur-Reply Position</u>

  Terms 14 and 15 are different, and the main dispute is Term 14.  Belden's Reply does not address CommScope's point.  Term 14 recites "eight ***connector terminals*** numbered 1-8 seriatim" which is different from Term 15 reciting "eight ***contacts*** numbered 1-8 seriatim." These mean different things.  *See*, Locati-2, ¶45.  Further, Belden ignores the rule that a phrase modifies the closest antecedent.  *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) ("A limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.").  Thus, the modifier "numbered 1-8 seriatim" should be construed to modify the noun it immediately follows.  In Term 14, that is "connector terminals."

  Belden's concern about whether the terminals or contacts are "arranged in a single line" is a strawman.  CommScope's construction refers to "sequential," not "single line."

## XII. <u>Term 16 - "said capacitive coupling elements, electrically connected to spring contacts number 1 and 5, are electrically isolated from each other"</u>

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said capacitive coupling elements, electrically connected to spring contacts number 1 and 5, are electrically isolated from each other" (Claim 9, 12) | Not indefinite.<br><br>the capacitive coupling elements connected to spring contacts number 1 and 5 are not electrically connected to each other | Indefinite<br><br>If deemed not indefinite then Plaintiff's construction should be rejected in favor of the following: the capacitive coupling elements connected to spring contacts number 1 and 5 are separated by an isolative barrier. |
| **Why Resolution Matters** | **Belden's Position** | **CommScope's Position** |

| | | |
|---|---|---|
| | Construction of this term relates to Defendants' invalidity arguments. | Resolution on construction may impact non-infringement of asserted claims against Defendants, and also their invalidity, including under Section 112. Specifically, for example, resolution will clarify whether structure identified in prior art and infringement contentions meet this limitation. |

A.    Plaintiff's Opening Position

The claims require that certain spring contacts, either numbers 4 and 8, or numbers 1 and 5, are electrically isolated from each other.  Belden's construction centers on how these spring contacts are not electrically connected to each other.

The Specification explains how in "[a]n 8-conductor system," there are "eight signal-carrying elements.  (D.I. 58, Ex. B 2:42-45.)  Because each of these eight spring contacts are used as conductive elements in an eight-conductor system, they must be independent of one another, and cannot be electrically connected to each other.  (Eldering Decl., ¶¶37-39.)  This requirement of the Specification is reflected in the claim language of "electrically isolated," which is understood in the art to mean "not electrically connected."  (*Id.*)  And there is no support in the Specification for CommScope's alternate construction that imports "an isolative barrier."

The Court should thus adopt Belden's construction.

B.    Defendants' Answering Position

The claims require that certain **capacitive coupling elements** are **electrically isolated** from each other.  Belden's focus on whether *spring contacts* are *not electrically connected* to each other is misplaced and incorrect.

The language is indefinite.  There is no objective standard provided in the specification regarding the amount of electrical isolation required.  *See* Locati Decl. ¶39.

To avoid this, Belden offers a construction that equates "electrically isolated" with "not electrically connected."  In support, Belden erroneously argues that the claims contrast "electrical isolation" with "electrically connected."

But in fact, the claims contrast "electrical isolation" with "electrical coupling."  *See* Locati Decl. ¶¶37-38.  The claims state that certain contacts (e.g., contacts 4 and 6, and contacts 6 and 8 in claim 12) are "capacitively coupled," whereas subsets of those contacts (e.g., contacts 4 and 8) are "electrically isolated."  The capacitive coupling occurs through plates that are facing each other without any isolating barrier.  Contacts 4 and 8 (and 1 and 5 for claim 9) do not have this coupling (they are isolated) because the plates for these contacts are separated by another plate.  *Id.* ¶¶37-42.

Moreover, there is substantial intrinsic evidence to support CommScope's construction.  Every embodiment shows at least one isolating structure (e.g., plate 94A coupled to contact 50, #6) positioned between the coupling elements electrically connected to spring contacts 4 and 8 (e.g., plates 92A and 96A).



This arrangement provides compensating electrical coupling between the plates connected to contacts 4 and 6 and between the plates connected to contacts 6 and 8, but electrically isolates plates for contacts 4 and 8 from each other by forming a barrier between.  The same holds true for

the plates connected to contacts 1, 3 and 5. Even though none of the plates in any of the embodiments are electrically connected to each other via a conductor, only plates 4 and 8 (and plates 1 and 5) are recited in the claims as being "electrically isolated" from each other.

CommScope's construction also is consistent with the specification. The specification incorporates by reference U.S. App. No. 09/276,004, which describes an ***isolation*** element 110 which physically separates (i.e., isolates) the twisted pairs (202, 204, 206, 208) from each other. See D.I. 58, Ex. 4, at FIG. 4.



The provisional application cited on the face of the '547 patent also supports CommScope. Provisional Application No. 60/110,595, which includes application claims 4, 7 and 12 that recite the electrically isolated language, explains that "[i]n order ***to prevent coupling*** between wires 1 and 5, the conductive plate connected to wire 3 is placed in between the plates connected to wires 1 and 5, thus ***shielding*** the two plates from each other." D.I. 58, Ex. 3 at 4:18-24 (emphasis added). It includes a similar description for preventing coupling between wires 4 and 8 by shielding. *Id*. Thus, the application equates the claimed "electrically isolating" with the placement of a shield to prevent coupling.

CommScope's construction also is supported by the understanding of POSITA. That person recognizes that elements not electrically connected to each other are not necessarily also "electrically isolated" from each other. The focus of the patent is addressing the crosstalk that

occurs between adjacent connector contacts that are not electrically connected to each other but not "isolated" from each other.  *See* Locati Dec. ¶¶41-42.

      C.      <u>Plaintiff's Reply Position</u>

CommScope admitted that "the claims contrast 'electrical isolation' with 'electric coupling,'" and apparently agreed that electrically isolated contacts are not electrically connected. But CommScope also invites the Court to go one step erroneously further by proposing an undefined "isolative barrier" to be interposed between such elements, a concept found nowhere in the Specification.  CommScope's citation to an incorporated reference in the Specification is misplaced, because such a reference cannot be used to rewrite the claims.  *See LG Elecs., Inc. v. Bizcom Elecs., Inc.*, 453 F.3d 1364, 1375 (Fed. Cir. 2006) (declining to adopt a definition from the incorporated reference during claim construction); *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022).  Moreover, CommScope never explained what counts as an "isolative barrier." For example, "air" is an effective isolative barrier for electrical signals, as anyone who has ever plugged a battery into an electrical device would understand.  (Eldering Decl., ¶¶61-62.)  It powers the device after it is connected, but not before.

Again, what CommScope is really trying to do is exclude PCB-based embodiments, such as the accused products, from the scope of the claims.  Yet as depicted below, in the PCB-based embodiment of Figure 2, planar conductors (yellow) are separated by both the dielectric material of the PCB (green) and air above.



And while it is true that this PCB-based embodiment contrasts with the non-PCB embodiments in the Patent-in-Suit in which plates are separated from one another by a dielectric extending along their entire surface, in both cases, the capacitive coupling elements are electrically isolated from one another.  (Eldering Decl., ¶63.)

The Court should reject CommScope's erroneous attempt to rewrite the claim and adopt Belden's construction.

D.    Defendants' Sur-Reply Position

Belden's assertion that CommScope "agrees" with Belden misses the point.  Although electrically "isolated" elements are not electrically "connected," the reverse is not true.  Even if elements are not electrically connected, they can still be electrically *coupled* with each other and thus not be electrically isolated. Coupling (i.e., cross-talk and compensation) is the whole point of this patent.

CommScope is not rewriting the claim.  CommScope's construction flows from the plain language (contrasting "coupling" with "electrical isolation"), the specification (describing the compensation structure as compensating for coupling between non-electrically-connected elements), the provisional application (which discusses shielding), and the incorporated reference.

Belden erroneously argues "air" can be an isolative barrier.  Nothing in the patent supports Belden's argument.  In the patent, the isolation is done by plates (e.g., plate 3 separates plates 1 and 5), not mere air.

**XIII.   Term 17 - "said capacitive coupling elements include dielectric elements"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said capacitive coupling elements include dielectric elements" (Claim 18) | the capacitors include dielectrics | The capacitive coupling elements have as a part of them dielectric elements. |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non-infringement of the asserted claims against Defendants, and also their invalidity, including under Section 112. |

A.    Plaintiff's Opening Position

Belden's construction focuses on how the capacitors include dielectrics, and is consistent with Belden's construction of "capacitive coupling elements" as "capacitor elements."

The Specification explains that "[c]ompensation structure 90 includes capacitive plates … substantially aligned with respect to each other and ***separated by a dielectric***" thus forming a capacitor.  (D.I. 58, Ex. B, 9:19-22.)  For example, the Specification explains that these dielectrics are separate structures that are placed between capacitor plates, either in the form of "dielectric plates" or "dielectric inserts."

By contrast, CommScope's construction again attempts to manufacture a non-infringement defense.  CommScope's proposal that "the capacitive coupling elements have as a part of them dielectric elements" has an unclear meaning and finds no support in the Specification.  Instead, every embodiment of the Specification refers to the dielectrics as ***separate*** structures that are

located *between* capacitive coupling elements.  CommScope's construction is inconsistent with this teaching and should be rejected in favor of Belden's construction.

B.    Defendants' Answering Position

CommScope's proposed construction follows the plain meaning of the claim language.  It simply states that the "capacitive coupling elements" have as a part of them (i.e., "include") "dielectric elements."  J.A. Ex. 2, JA0156 (defining "include" as "To take in as a part, an element, or a member"); J.A. Ex. 3, JA0163 (defining "include" as "to contain, as a whole does parts or any part or element"); J.A. Ex. 4, JA0169 (defining "include" as "1: to have as contents or part of the contents, be made up of or contain. 2: to add as part of something else; put in as part of a set, group, or category. 3: to contain as a secondary or minor ingredient or element."); J.A. Ex. 5, JA0175 (defining "include" as "to take in or comprise as part of a whole").

The plain language is clear and should be construed to mean what Belden wrote, not what Belden now wants it to say under the rubric of claim construction.  *See Haemonetics Corp.*, 607 F.3d at 782 ("[W]e do not redraft claims to contradict their plan language in order to avoid a nonsensical result."); *Cooper Notification, Inc.*, 867 F. Supp. 2d at 494 (same).  If the plain language is not supported by the specification—as Belden argues—then that is a Section 112 written-description issue for resolution at another time.

Belden ignores the claim's plain meaning and offers a proposed construction that has numerous problems.  First, it is inconsistent with Belden's construction and briefing regarding Term 10.  For Term 10, Belden asserts that "capacitive coupling elements" means "capacitor elements."  However, for Term 17, Belden interprets "capacitive coupling elements" as "capacitors," a word that appears nowhere in the specification.  Without this switch (from its Term 10 construction to its Term 17 construction), Belden's construction of Term 17 would be "capacitor elements include dielectrics."  But such a construction would have the same "issue"

82

that Belden asserts is problematic with CommScope's construction, i.e., the specification discloses that dielectric structures are separate structures from the capacitive coupling elements/capacitor elements.

Second, it is inconsistent with other language in claim 18.  The claim previously recites "at least two of said spring contacts having capacitive coupling elements electrically connected to said moveable ends of said at least two spring contacts."  As CommScope explained in connection with Term 10(b), none of the contacts are "electrically connected" to a capacitor; they are only electrically connected to the capacitive plates.

Third, Belden's construction replaces "dielectric elements" with "dielectrics."  Dielectric "elements" requires physically-identifiable dielectric structure (e.g., dielectric plates).

Fourth, Belden's construction results in redundant language.  The term "capacitor" by definition includes a dielectric.   J.A. Ex. 6, JA0180 ("A device which consists essentially of two conductors (such as parallel metal plates) insulated from each other by a dielectric . . . .");  J.A. Ex. 7, JA0185 ("A component that . . . consists of an arrangement of at least two conductors or semiconductors separated by a dielectric (an insulator).").  As such, proposing "the capacitors *include dielectrics*" is nonsensical and/or redundant.  *See Apple, Inc.*, 842 F.3d at 1237 ("Ideally, claim constructions give meaning to all of a claim's terms. Construing a claim term to include features of that term already recited in the claims would make those expressly recited features redundant.") (internal citation omitted).

C.   Plaintiff's Reply Position

CommScope admitted that "[t]he term 'capacitor' by definition includes a dielectric."  This alone should end the dispute.  And CommScope's own dictionary confirms Belden's construction that capacitors include *both* conductors and a dielectric.  (J.A. Ex. 6, JA0180 ("[a] device which

consists essentially of two conductors (such as parallel metal plates) insulated from each other by a dielectric and which introduces capacitance into a circuit.").)

And while CommScope is concerned about redundancy, most jurors may not understand how "[t]he term 'capacitor' by definition includes a dielectric" such that any redundancy might actually help them better understand the issues they are being asked to decide.[7] *See Sulzer Textil A.G.*, 358 F.3d at 1366 (explaining that "the district court must instruct the jury on the meanings to be attributed to all disputed terms").

And speaking of redundancy, what is really going on is that CommScope wants to use the construction of this term to exclude PCB-based embodiments from the scope of the claims. CommScope seemingly believes that its construction would require separate "dielectric plates" and would, for that reason, exclude PCB-based capacitors such as shown in Figure 2.



However, even that is wrong. PCB-based capacitors can also have conductive plates and dielectric plates, as shown above in yellow.

---

[7] CommScope's reliance on *Apple, Inc.*, 842 F.3d at 1237, is misplaced, because that case involved redundant express claim language, which is not the case here.

Belden's construction should be adopted.  It closely follows the Specification, which explains that "[c]ompensation structure 90 includes capacitive plates … substantially aligned with respect to each other and ***separated by a dielectric***" thus forming a capacitor.  (D.I. 58, Ex. B, 9:19-22.)

D.    Defendants' Sur-Reply Position

Belden does not dispute the accuracy of CommScope's construction.  Belden also does not address any of the four identified problems with Belden's construction.  The specification does not help Belden.  It says "capacitive plates . . . separated by a dielectric" (not capacitors *including* dielectrics).

**XIV.** **Term 18 - "said plurality of connector terminals include eight connector terminals numbered 1-8 seriatim"**

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said plurality of connector terminals include eight connector terminals numbered 1-8 seriatim" (Claims 19, 21) | Not indefinite. "said plurality of contacts include eight connector terminals numbered 1-8 seriatim" which means the eight contacts each include a connector terminal and are sequentially arranged from 1 to 8 | "connector terminals numbered 1-8 seriatim" means terminals of eight of the contacts are numbered and arranged in sequential order from 1 to 8 (see "said plurality of contacts include eight connector terminals numbered 1- 8 seriatim" vis-a-vis claims 7 and 18) Indefinite ("said plurality of connector terminals ...").  There is no antecedent basis. |
| **Why Resolution Matters** | **Belden's Position** | **CommScope's Position** |
| | Construction of this term relates to Defendants' invalidity arguments. | Resolution on construction may impact non-infringement of the asserted claims against Defendants, and also their invalidity, including under Section 112 |

A.     Plaintiff's Opening Position

Belden seeks judicial correction of the obvious typographical error "said plurality of connector terminals include eight connector terminals."  Belden's proposed judicial correction corrects this typographical error that twice repeats the same phrase "connector terminals" to read "said plurality of contacts include eight connector terminals numbered 1-8 seriatim," which then should be construed consistently with that term (*see* Section XI, *supra* at 71-73).  The Court may correct the error because the intrinsic evidence shows that the proposed correction is not subject to reasonable debate.  *See Pavo Sols.*, 35 F.4th at 1373-78.

Indeed, a POSA would have readily understood how to correct such an obvious typographical error.  First, the repetitive "said connector terminals" including "connector terminals" would indicate that the first instance of this term should be corrected.  (Eldering Decl., ¶42.)  Second, the parallel claim language of claims 7, 10 and 18 would point at the solution of replacing "said connector terminals" with "said plurality of contacts."  (*Id.*)  Third, the later recitation of "contacts number 4 and 6" and "contacts number 6 and 8" in claim 19, and "contacts number 1, 3 and 5" and "contacts number 4, 6 and 8" in claim 21 would also point at the same reasonably ascertainable understanding.  (*Id.*)

For these reasons, and because courts construe claims with an eye towards preserving their validity, *see Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999), Belden respectfully requests the Court correct the obvious typographical that repeats the phrase "connector terminals."

B.     Defendants' Answering Position

The Court should reject this claim language as indefinite.  The recitation of "said plurality of connector terminals" lacks antecedent basis and is nonsensical because there is no prior recitation in the claim of "a plurality of terminals."  *Haddad v. United States*, 164 Fed. Cl. 28, 71 (2003) ("When a claim term has no express antecedent basis, the claim term is indefinite" if it does

not provide "information to sufficiently clarify the boundary of the claim."); *see also RetailMeNot, Inc. v. Honey Sci. Corp.*, No. 18-937, 2019 U.S. Dist. LEXIS 205723, *53-58 (D. Del. Nov. 27, 2019) (rendering the claim "*the* server" indefinite because it lacked an antecedent basis); *Truinject Corp. v. Galderma*, No. 19-592, 2020 WL 3287047, at *9 (D. Del. June 18, 2020).

There are two problems with Belden's request that the Court judicially "fix" the claim with Belden's proposed edit.  First, the Court cannot correct the indefinite claim language because Belden's "fix" is just one of many alternative potential fixes.  As one example, the prefatory word "said" could be replaced by "a" so that the claim reads "wherein a plurality of connector terminals include eight connector terminals numbered 1-8 . . . ."  As another example, and given the claims' recitation to "connector terminals numbered 1-8 seriatim" and also "contacts number 4 and 6 . . . and 8", other different fixes include (a) including Belden's "fix" and changing "connector terminals numbered 1-8" to "contacts numbered 1-8" or (b) including Belden's "fix" and changing "contacts number 4 . . . 6 and 8" to "connector terminals number 4 . . . 6 and 8", each of which has a different scope.  The different recitations to "contacts numbered 1-8 seriatim" in some claims and "connector terminals numbered 1-8 seriatim" in others (e.g. claims 7, 10, 12) bolster that each phrase is possible—and that each phrase is deliberately different.  *See* Locati Decl. ¶¶43-46.

Given the multiple different potential fixes, and the changing scope of coverage depending on the fix, the Court cannot fix the typographical error.  *See Novo Indus., L.P*, 350 F.3d at 1354 (a court may only correct an error that "is not subject to reasonable debate"); *United Cannabis Corp.*, 2019 WL 10301524, at *3 (a claim can only be corrected if it is "subject to only one arguable correction"); *see also GREE*, 2020 WL 6559435, at *17-18 (refusing to correct a patent claim where there were at least two reasonable corrections but no way to discern which was the proper correction).

Second, even if the Court were to adopt Belden's "fix" (and change the claim language as Belden requests), for the reasons set forth in CommScope's discussion of Term 14, the Court should reject Belden's interpretation of the construction and adopt CommScope's construction. The claim (and Belden's construction) specifically recite that **connector terminals** are numbered 1-8 seriatim, not the contacts.

C.    Plaintiff's Reply Position

Judicial correction is plainly warranted.  The first requirement for judicial correction is that the error be "obvious," and CommScope and its expert point to no evidence suggesting that there is no error and instead confirm that there is an error.  *See Novo Indus., L.P.,* 350 F.3d at 1355.

Instead, CommScope and its expert suggest that the error can be corrected in different ways, by either numbering the contacts or the terminals.  But whether the contacts or the terminals are numbered does not change the claim scope.  This is because the only time the numbering is used in the claim is to specify by number which contacts are capacitively connected to each other, *e.g.*, "spring contacts **number 4 and 6** are capacitively coupled."  But, because each contact is electrically connector to a corresponding terminal, numbering either the contacts or the terminals describes the same coupling.  (Eldering Decl., ¶65.)

So even if CommScope's alternate proposals are plausible, they all lead to the same claim scope, and CommScope does not suggest otherwise.  (*Id.*)  Judicial correction is therefore appropriate.  *See CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1359 (Fed. Cir. 2011) (district court had authority to correct patent where three plausible corrections resulted in the same claim scope).

D.    Defendants' Sur-Reply Position

Belden does not dispute that this term (1) is indefinite unless rewritten and (2) can reasonably be amended differently from Belden's proposed amendment.  Belden erroneously argues that the

claim scope is the same regardless of amendment. There is a clear difference between whether the

"contacts" or the "terminals" are numbered 1-8. *See* Terms 14-15; Locati-2, ¶45.

## XV.   Term 19 - "said spring contacts number 1, 3 and 5 are capacitively coupled by a first set of said capacitive coupling elements, and said spring contacts number 4, 6 and 8 are capacitively coupled by a second set of said capacitive coupling elements"

| Term | Belden's Construction | CommScope's Construction |
|---|---|---|
| "said spring contacts number 1, 3 and 5 are capacitively coupled by a first set of said capacitive coupling elements, and said spring contacts number 4, 6 and 8 are capacitively coupled by a second set of said capacitive coupling elements" (Claim 21) | Spring contacts number 1, 3 and 5 are electrically connected to three of the capacitive coupling elements, which are capacitively coupled to each other (*i.e.*, form capacitors), and spring contacts number 4, 6 and 8 are electrically connected to three of the capacitive coupling elements, which are capacitively coupled to each other (*i.e.*, form capacitors) | Spring contacts 1, 3 and 5 are each capacitively coupled to each other by a first group of capacitive coupling elements, and spring contacts 4, 6 and 8 are each capacitively coupled to each other by a second group of capacitive coupling elements different from the first group of capacitive coupling elements. |
| | **Belden's Position** | **CommScope's Position** |
| **Why Resolution Matters** | Construction of this term may impact validity and/or infringement and may assist the jury. | Resolution on construction may impact non- infringement of the asserted claims against Defendants, and also their invalidity, including under Section 112. |

### A.   Plaintiff's Opening Position

Belden's construction centers on how each set of spring contacts, *i.e.*, numbers 1, 3 and 5,

and numbers 4, 6 and 8, are electrically connected to three of the capacitive coupling elements,

which are capacitively coupled to each other (*i.e.*, form capacitors).

CommScope's construction requires that the second group of capacitive coupling elements

must be different from the first group of capacitive coupling elements. This additional,

unnecessary and unclaimed requirement of different groups appears to be yet another attempt to make-up a non-infringement defense that does not exist, and should be rejected. *See Kara Tech.,* 582 F.3d at 1348.

The following preferred embodiment shown in Figure 3 of the Specification illustrates that the capacitive coupling elements are present in one group highlighted in yellow:



CommScope's construction would exclude this preferred embodiment, and therefore should be rejected. *See Accent Packaging,* 707 F.3d at 1326.

B.     Defendants' Answering Position

CommScope's construction adopts a plain reading of the claim language.  It supports the position that "a first set of said capacitive coupling elements" is different from "a second set of said capacitive coupling elements," so they can be described as first and second groups of elements.  D.I. 58, Ex. B, claim 21 (16:15-20).  Belden's construction is confusing and wrong as it reads the words "first set" and "second set" out of the claim.

Belden points to Figure 3 and erroneously claims that the capacitive coupling elements are only "present in one group."  *See* Plaintiff Op. Position, *supra* at 90.  But Figure 3 clearly shows two groups or two sets of three capacitive coupling elements each: one on the left (102, 100, 98) and one on the right (96, 94, 92).



Indeed, every disclosed embodiment discloses two different groups of capacitive coupling elements, one group coupled to contacts 1, 3 and 5, and the other coupled to contacts 4, 6 and 8, such as illustrated below:



FIG. 4A                                 FIG. 5

CommScope's construction fits **the claim language** which recites "a first set" and "a second set." The Court should adopt CommScope's construction.

C.      Plaintiff's Reply Position

CommScope's construction seeks to limit the claims to situations in which the elements coupling contacts 1, 3 and 5 do not overlap with the elements coupling contacts 4, 6 and 8. To achieve this, CommScope argued that the elements are located in two distinct groups in an example from the Specification, as annotated below:



This is a classic example of reading in limitations from the Specification, and should be rejected. *See Kara Tech.*, 582 F.3d at 1348.

Belden's definition correctly centers on the claim language, which simply requires that each set of spring contacts, *i.e.*, numbers 1, 3 and 5, and numbers 4, 6 and 8, are electrically connected to three of the capacitive coupling elements, which are capacitively coupled to each other (*i.e.*, form capacitors).  Nothing in the claims requires that the elements be placed in two distinct groups.

    D.    <u>Defendants' Sur-Reply Position</u>

CommScope is not reading in limitations.  The claims require a "first set" and "second set." *Belden* is writing out the requirement of first and second "sets."

Date: February 29, 2024

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Robert M. Vrana*
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
(302) 571-6600
pkraman@ycst.com
rvrana@ycst.com
jsiew@ycst.com

*Of Counsel:*

Douglas J. Nash
John D. Cook
Genevieve M. Halpenny (No. 6738)
BARCLAY DAMON, LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

RICHARDS LAYTON & FINGER, P.A.

*/s/ Sara M. Metzler*
Kelly E. Farnan (#4395)
Sara M. Metzler (#6509)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302) 651-7700
farnan@rlf.com
metzler@rlf.com

*Of Counsel:*

Philip P. Caspers
Timothy A. Lindquist
Dennis C. Bremer
Tara C. Norgard
Saukshmya Trichi
Christopher R. Johnson
CARLSON, CASPERS, VANDENBURGH
& LINDQUIST, P.A.
225 South Sixth Street, Suite 4200

(315) 425-2700
dnash@barclaydamon.com
jcook@barclaydamon.com
dsullivan@barclaydamon.com
ghalpenny@barclaydamon.com

Naresh K. Kannan
BARCLAY DAMON, LLP
80 State Street
Albany, New York 12207
(518) 429-4200
nkannan@barclaydamon.com

*Attorneys for Plaintiff*

Minneapolis, Minnesota 55402
Telephone: (612) 436-9600
PCaspers@carlsoncaspers.com
TLindquist@carlsoncaspers.com
DBremer@carlsoncaspers.com
TNorgard@carlsoncaspers.com
STrichi@carlsoncaspers.com
CJohnson@carlsoncaspers.com

*Attorneys for Defendants*