IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BELDEN CANADA ULC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 22-782-RGA |
| | ) | |
| COMMSCOPE, INC., COMMSCOPE, INC. OF NORTH CAROLINA, and COMMSCOPE TECHNOLOGIES LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**BELDEN'S MOTION FOR EXTENSION
OF TIME TO FILE NOTICE OF APPEAL**

Pursuant to Federal Rule of Appellate Procedure ("FRAP") 4(a)(5)(A), Plaintiff Belden Canada ULC ("Belden") respectfully moves to extend the deadline for Belden to file a notice of appeal. As grounds for this motion, Belden states the following:

1. Final Judgment was entered in this case on October 14, 2025. (D.I. 323.)

2. Belden's deadline to file a notice of appeal in this case was November 13, 2025, which was 30 days from the entry of Final Judgment. FRAP 4(a).

3. FRAP 4(a)(5)(A) provides: "The district court may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) . . . that party shows excusable neglect or good cause."

4. Belden's motion is based on excusable neglect. "The excusable neglect standard applies in situations in which there is fault; in such situations, the need for an extension is usually occasioned by something within the control of the movant." FRAP 4(a)(5)(A)(ii) (2002 Advisory Committee Notes).

5. In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), the Supreme Court examined the meaning of "excusable neglect" in the context of Fed. R. of Bankr. P. 9006(b)(1), holding "that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," and includes a consideration of (a) the danger of prejudice to the nonmovant, (b) the length of the delay and its potential impact on judicial proceedings, (c) the reason for the delay, including whether it was within the reasonable control of the movant; and (d) whether the movant acted in good faith (the "*Pioneer* Factor(s)"). *Id.* at 395. The Third Circuit considers the *Pioneer* Factors in connection with a motion pursuant to FRAP 4(a)(5)(A). *In re Diet Drugs Prod. Liability Litig.*, 401 F.3d 143, 153-54 (3d Cir. 2005).

6. The Third Circuit also considers: (1) whether the inadvertence reflects professional incompetence such as ignorance of the rules of procedure; (2) whether the asserted inadvertence reflects an easily manufactured excuse incapable of verification by the court; (3) whether the tardiness results from counsel's failure to provide for a readily foreseeable consequence; (4) whether the inadvertence reflects a complete lack of diligence; or (5) whether the court is satisfied that the inadvertence resulted despite counsel's substantial good faith efforts toward compliance (the "*Consolidated* Factor(s)"). *See Consolidated Freightways Corp. of Del. v. Larson*, 827 F.2d 916, 919 (3d Cir. 1987); *see also Ragguette v. Premier Wines & Spirits*, 691 F.3d 315, 325-26 (3d Cir. 2012) (same).

7. The court in *Consolidated* further explained that:

> This court interprets Rule 4(a)(5) to require a finding of excusable neglect in those instances where the court, after weighing the relevant considerations is satisfied that counsel has exhibited substantial diligence, professional competence and has acted in good faith to conform his or her conduct in accordance with the rule, but as a result of **some minor neglect**, compliance was not achieved . . . .

> Though this court does not deny that counsel's error could have been detected by careful proofreading, the court recognizes that *even the most diligent practitioners are susceptible to such human error* . . . .
>
> Finally . . . the finality doctrine and the rules governing timeliness of appeals exist to promote fairness, and to promote prompt notice of appeal thereby avoiding the prejudicial effect of reopening litigation which the opposing party had assumed was closed. The length of the delay and the basis of the delay affect the overall fairness concern. Where as here the delay was minimal, and where the court has determined that the delay was not the result of any bad faith but rather occurred despite counsel's substantially diligent efforts at compliance, the judicial interest in deciding cases on the merits *outweighs* the interests in finality.

*Id.* at 920 (cleaned up) (emphasis added).

8. As set forth in the accompanying Declaration of Douglas J. Nash ("Nash Decl."), the failure to submit a notice of appeal by the deadline resulted from two primary factors. First, lead counsel for Belden, who was the attorney at his firm working with Belden and its appellate counsel on a planned appeal, properly calculated the deadline the day after Final Judgment was entered and confirmed that date with Belden's appellate counsel. (Nash Decl., ¶3.) However, the deadline inadvertently was not calendared by lead counsel. (*Id.* at ¶4.) Second, although he was aware, as lead counsel, that he ultimately would be responsible for filing the notice of appeal, he was under the mistaken belief that appellate counsel was drafting the notice and would circulate a draft in advance of the deadline. (*Id.*) As a result, lead counsel put the matter out of his mind and, because the deadline was not calendared, he did not receive a reminder from his calendaring system as the deadline approached and no draft was circulated. (*Id.*)

9. These facts are relevant to at least *Consolidated* Factors (1), (4) and (5), and *Pioneer* Factors (c) and (d). They show that lead counsel was not incompetent, nor ignorant of the rules. He simply made an honest mistake in not calendaring the deadline and by believing incorrectly that appellate counsel was preparing the notice and would circulate a draft in advance of the deadline. (Nash Decl., ¶7.) These facts also reflect a good faith, albeit unsuccessful, attempt by

lead counsel to diligently comply with the deadline. (*Id.* at ¶¶10-11.) Indeed, lead counsel calculated the deadline the day after the entry of Final Judgment and confirmed that date was correct with appellate counsel that same day. (*Id.* at ¶¶3.) And as the Third Circuit has observed, "even the most diligent attorneys are subject to these kinds of common human errors." *Consolidated*, 827 F.2d at 920.

10. With respect to *Consolidated* Factor (2), each of these facts is verifiable. There is an email thread between lead counsel, Belden and appellate counsel dated October 15, 2025 (the day after Final Judgment entered), a copy of which can be submitted to the Court for *in camera* review upon request. (Nash Decl., ¶8.)

11. With respect to *Consolidated* Factor (3), lead counsel is ***not*** trying to explain away or excuse the mistake by pointing to other case work or a vacation, all of which could have been planned around. He is just acknowledging that a mistake was made. As the Third Circuit has observed, "this type of human error, though avoidable, was not readily foreseeable." *See Consolidated*, 827 F.2d at 920.

12. With respect to *Pioneer* Factor (a), there is no prejudice to the defendants beyond the fact that an appeal that everyone expected to happen will move forward. Indeed, as discussed with the Court during the October 10, 2025 pre-trial conference, the parties drafted the Final Judgment with the goal of it being appealable. (Nash Decl., ¶13.) Similarly, with respect to *Pioneer* Factor (b), lead counsel first realized the deadline had been missed two business days after it passed, and Belden immediately started to prepare a motion for an extension, and lead counsel immediately started to draft his declaration. (*Id.*) This motion was filed the very next day. Any delay caused by a short extension of the deadline will have minimal impact on the parties, particularly given that the case was filed more than three years ago. (*See* D.I. 1 (Filed on June 13, 2022.)

13. Finally, lead counsel explains in his declaration that he has been dealing with significant family issues that have caused distraction. (Nash Decl., ¶14.) Similar family issues have been found to be relevant to excusable neglect. *See Local Union No. 12004 v. Massachusetts*, 377 F.3d 64, 72 (1st Cir. 2004) (The First Circuit reviewed the *Pioneer* Factors and found plaintiff's explanation meritorious, holding that the district court had not abused its discretion in finding excusable neglect when a party's counsel became preoccupied with caring for his severely ill infant.); *San Juan City College v. United States*, 75 Fed. Cl. 540, 543 (2007) (finding excusable neglect where "plaintiff's counsel describe[d] how she became overwhelmed by the illness of her father, the requirements as a care taker, and the death of her father").

14. At the end of the day, an honest mistake was made in connection with an appeal that everyone expected would be filed. That mistake, while certainly preventable, was not foreseeable, nor the product of a dereliction of duty. It was just a mistake made by someone dealing with the most human of issues outside of work. And it was the type of mistake contemplated by FRAP 4(a)(5)(A).

WHEREFORE, Belden respectfully requests that the Court permit Belden to file a notice of appeal, in the form attached hereto, upon entry of the attached Order.

| | |
|---|---|
| Dated: November 18, 2025 | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| *Of Counsel:*<br>Douglas J. Nash<br>Denis J. Sullivan<br>John D. Cook<br>BARCLAY DAMON LLP<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, NY 13202<br>(315) 425-2700<br>dnash@barclaydamon.com<br>dsullivan@barclaydamon.com<br>jcook@barclaydamon.com | */s/ Pilar G. Kraman*<br>Pilar G. Kraman (No. 5199)<br>Robert M. Vrana (No. 5666)<br>Jennifer P. Siew (No. 7114)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>pkraman@ycst.com<br>rvrana@ycst.com<br>jsiew@ycst.com |

- 6 -

| | |
|---|---|
| Naresh K. Kannan<br>BARCLAY DAMON LLP<br>80 State Street<br>Albany, NY 12207<br>(518) 429-4200<br>nkannan@barclaydamon.com | *Attorneys for Belden Canada ULC* |

Case 1:22-cv-00782-RGA   Document 336   Filed 11/18/25   Page 7 of 7 PageID #: 19168

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 18, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

| | |
|---|---|
| Kelly E. Farnan | Timothy A. Lindquist |
| Sara M. Metzler | Dennis C. Bremer |
| Richards Layton & Finger, P.A. | Philip P. Caspers |
| One Rodney Square | Tara C. Norgard |
| 920 North King Street | William F. Bullard |
| Wilmington, DE 19801 | Katherine Chen |
| farnan@rlf.com | Mitchell R. Williams |
| metzler@rlf.com | Carlson, Caspers, Vandenburgh |
| | & Lindquist, P.A. |
| | 225 South Sixth Street, Suite 4200 |
| | Minneapolis, MN 55402 |
| | tlindquist@carlsoncaspers.com |
| | dbremer@carlsoncaspers.com |
| | pcaspers@carlsoncaspers.com |
| | tnorgard@carlsoncaspers.com |
| | wbullard@carlsoncaspers.com |
| | kchen@carlsoncaspers.com |
| | mwilliams@carlsoncaspers.com |
| | CommScope_Belden_CCVL@carlsoncaspers.com |

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Pilar G. Kraman*
Pilar G. Kraman (No. 5199)
Robert M. Vrana (No. 5666)
Alexis N. Stombaugh (No. 6702)
Jennifer P. Siew (No. 7114)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
rvrana@ycst.com
astombaugh@ycst.com
jsiew@ycst.com

*Attorneys for Belden Canada ULC*